**AXELSON, INC., SUBSIDIARY OF U.S. A. INDUSTRIES, INC., Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

No. 78–1232.

United States Court of Appeals, Fifth Circuit.

July 20, 1979.

Kothe, Nichols & Wolfe, Frank B. Wolfe, III, Lynn Paul Mattson, Tulsa, Okl., for petitioner, cross-respondent.

Elliott Moore, Deputy Assoc. Gen. counsel, N.L.R.B., Lawrence E. Blatnik, Atty., Washington, D.C., for respondent, cross-petitioner.

Before GEWIN, GOLDBERG and VANCE, Circuit Judges.

GEWIN, Circuit Judge:

Axelson, Inc., a subsidiary of U.S.A. Industries, Inc., filed a petition seeking a review of a decision and order of the National Labor Relations Board [1] pursuant to § 10(f) of the National Labor Relations Act, as amended. 29 U.S.C. § 151 *et seq.* The Board cross-applied for enforcement of its order.

The Board, reversing an earlier decision by an Administrative Law Judge, found that the company had unilaterally refused

---

1. *Axelson, Inc., Subsidiary of U. S. Industries, Inc. and Machinists, AFL -CIO,* 234 NLRB No 49 (1978), 97 LRRM 1234 (1978).

to pay employee members of the Union's negotiating committee for production wages lost by them while participating in working time contract negotiations, in violation of the then current contract and established past practice. The Board further determined that petitioner had refused to bargain with the Union on that matter in violation of § 8(a)(5) & (1) of the National Labor Relations Act.

The parties, in general, accept the findings of fact of the administrative law judge. The dispute in the instant case arose during the negotiation of the current contract which runs from March, 1976 until 1979. Petitioner and the union had been involved in a succession of bargaining contracts covering the production and maintenance employees since 1959 with the Union being represented in the contract negotiations by a shop committee comprised of bargaining-unit employees. In recent years, this committee has consisted of four members.

The administrative law judge found the evidence to be uncontroverted that in all negotiations from 1963 through 1973, with the possible exception of 1969,[2] all members of the shop committee representing the Union had been paid, at their regular hourly rates, for the time they spent in negotiating sessions which otherwise would have been spent in production activities.

The instant dispute arose during one of the first bargaining sessions for the current contract. The shop committee asked that one of its members, Harvey Cross, be reassigned from the night to the day shift. Petitioner's chief bargaining spokesman, Mr. West, questioned the reason for the request and was told by the committee that they felt it would be unfair to require Cross to work his full production shift to maintain his income level during negotiations while those members on the day shift were being excused from their production work to participate in negotiations without loss of pay. During the 1974 negotiations, the company

had accommodated a similar request by allowing one of the committee members, C. C. McKee, to make a shift change. Mr. West stated that he did not know whether any of the committee members would be paid for the time they spent in negotiations but he would confer with his superior and inform the committee of his decision. Negotiations terminated at that point.

At the following bargaining session West informed the committee that they would not be paid for the time they spent in negotiations away from their work, but offered in the alternative to meet during non-work time such as weekends. This offer was rejected by the committee which cited past practice and the 1974–1976 contract as support for their position that they were entitled to production pay during negotiations.

The relevant provisions of the 1974–76 contract are as follows:

6.4 A shop committeeman will, after notice and permission from his immediate supervisor, be allowed to leave his work, if necessary, for the following reasons:

\* \* \* \* \* \*

(D) to attend negotiation sessions with Company representatives for the purpose of renewing this agreement.

\* \* \* \* \* \*

6.5 If it becomes necessary for a . . committeeman to leave his work, after receiving permission from his immediate supervisor in accordance with Section . . . 6.4 of this article, he must clock out on his job card and, on his return, clock in on his job card.

\* \* \* \* \* \*

(B) The . . . shop committeeman will receive pay for time so spent when authorized by his supervisor prior to, during, and after normal working hours at his regular straight time hourly rate except on scheduled overtime.

Record at 101.

The evidence at the hearing established that Article 6.4(d) was identical to the lan-

---

**2.** Negotiations during this period occurred in 1963, 1965, 1967, 1971, 1974 and mid-term pension negotiations in 1973. The record is silent

concerning payment during the negotiations in 1969.

guage in the five preceding contracts. Article 6.5(B) in the contracts preceding the 1974–76 contract had read:

> (B) The . . . shop committeeman will receive pay for time so spent during his normal working hours only and only at his regular, straight time rate of pay.
>
> . . .

Record at 101.

The union instituted an action under the grievance-arbitration procedure of the 1974–76 contract asserting that respondent's refusal to pay violated 6.5(B) and filed an unfair labor practice complaint.[3] Disposition of that charge was deferred under the Board's *Collyer* doctrine.[4] The charge was later reactivated after the grievance proceeding failed to reach the merits of the dispute.

■ The threshold issue in this controversy turns on whether the Board was correct in its determination that remunerating members of a collective bargaining unit for time spent in negotiation is a mandatory subject of bargaining. Petitioner contends that the Board's determination was not based on substantial evidence. We do not agree and accordingly direct that the Board's order be enforced.

It is axiomatic that it is an unfair labor practice to unilaterally modify a collective bargaining agreement when the modification changes a term that is mandatory rather than a permissive subject of bargaining. *E. g., Allied Chemical & Alkali Workers v. P.P.G. Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971).

The Supreme Court has articulated the test against which subjects of bargaining are to be measured to determine whether or not they are mandatory. In *Allied Chemical & Alkali Workers v. P.P.G. Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) the Court noted that § 8(d) of the Act "does not immutably fix a list of subjects for manda-

tory bargaining," but that it does "establish a limitation against which proposed topics must be measured." Citing its earlier case of *NLRB v. Wooster Div. of Borg-Warner Corp.,* 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958), the Court observed that in general the limitation requires bargaining over only those issues "that settle an aspect of the relationship between the employer and employees."

Justice White, speaking for the Court, reaffirmed the settled view that the Board's statutory interpretation should be given due deference. *NLRB v. Iron Workers,* 434 U.S. 335, 350, 98 S.Ct. 651, 659, 54 L.Ed.2d 586, 598 (1978); *NLRB v. Erie Resister Corp.,* 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308, 319 (1963). Although courts may prefer a different application of the relevant sections, they have long been cognizant that the onerous task of striking a balance between legitimate conflicting interests to effectuate national labor policy has been committed by Congress to the National Labor Relations Board, subject to limited judicial review. *E. g., NLRB v. Iron Workers,* 434 U.S. 335, 350, 98 S.Ct. 651, 659, 54 L.Ed.2d 586, 598 (1978); *NLRB v. Insurance Agents,* 361 U.S. 477, 499, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960); *NLRB v. Truck Drivers Union,* 354 U.S. 87, 96, 1 L.Ed.2d 676, 77 S.Ct. 643 (1957).

In light of this limited scope of review, we must determine whether the Board has moved into an area of regulation which Congress has not committed to it. *NLRB v. Iron Workers, supra; NLRB v. Insurance Agent's International, supra.* This might best be accomplished by a careful examination of prior cases that have considered the legislative history and the prevailing case law in reaching a judicious interpretation of the relevant sections.

An abbreviated but nonetheless noteworthy historical review of the relevant sec-

---

3. "The complaint alleges that, during 1976 contract negotiations between Respondent and the Union, Respondent 'unilaterally changed working conditions by refusing to pay employee members of the Union negotiating committee for time spent in contract negotia-

tions,' thereby violating Section 8(a)(5) and (1)."

Decision of Richard J. Boyce, Administrative Law Judge, Record at 100.

4. *Collyer Insulated Wire,* 192 NLRB 837 (1971).

tions is supplied by Justice Brennan in *Allied Chemical.* Therein he recalled that Congress had rejected the efforts to enact provisions that would have made contract violations an unfair labor practice. Congress, instead, chose to leave the parties to the relief afforded them under the normal processes of the law. Speaking for the Court, Justice Brennan stated that the relevant aim of § 8(d) "[sought] to bring about the termination and modification of collective bargaining agreements without interrupting the flow of commerce or the production of goods . . . ." *Allied Chemical, supra,* 404 U.S. at 187, 92 S.Ct. at 402, 30 L.Ed.2d at 362, *quoting Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 284, 76 S.Ct. 349, 358, 100 L.Ed. 309, 321 (1956).

Thus, in examining the parameters limiting the mandatory subjects of bargaining, the examination transcends mere contract violation to focus on whether the relevant issue sets a term or condition of employment or regulates the relationship between the employees and employer. *International Union of Operating Engineers, Local Union No. 12,* 187 NLRB 430, 432 (1970).

As was noted by the parties, the instant case is one of first impression. However, in cases involving a similar union function the Board concluded, with court approval, that the payment of wages to employee union representatives for working time presentation of grievances was a mandatory subject of bargaining, and the unilateral abrogation of such a past practice or contract term was an unfair labor practice. *See American Ship Building Co.,* 226 NLRB 788, 796–99 (1976); *The Hilton-Davis Chemical Comp., Division of Sterling Drug, Inc.,* 185 NLRB 241, 242–43 (1970); *Bethlehem Steel Co.,* 133 NLRB 1347, 1352 (1961), supplemental decision, 136 NLRB 1500, 1501–03 (1962), *remanded on other grounds sub nom. Industrial Union of Marine & Shipbuilding Workers of America, AFL–CIO v. NLRB,* 320 F.2d 615, 620 (3d Cir. 1963), *cert. denied,* 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472, second supplemental decision, 147 NLRB 977 (1964).

Various circuits have approved the Board's view that seniority and superseniority provisions are mandatory subjects of bargaining. *NLRB v. Cone Mills Corp.,* 373 F.2d 595 (4th Cir. 1967); *Industrial Union of Marine & Shipbuilding Wkrs. v. NLRB,* 320 F.2d 615 (3d Cir. 1963); *NLRB v. Proof Co.,* 242 F.2d 560 (7th Cir. 1957); *NLRB v. Century Cement Mfg. Co.,* 208 F.2d 84 (2d Cir. 1953). Pension plans and health insurance benefits have also been deemed to be mandatory subjects of bargaining by several circuits. *O, C & Atomic Wkrs. Int. Union, AFL–CIO v. NLRB,* 178 U.S.App.D.C. 301, 547 F.2d 575 (1976) (insurance); *Connecticut Light & Power Co. v. NLRB,* 476 F.2d 1079 (2d Cir. 1973) (insurance); *Bastian Blessing, Div. of Golconde Corp. v. NLRB,* 474 F.2d 49 (6th Cir. 1973) (insurance); *Retail Clerks Union, No. 1550 v. NLRB,* 117 U.S.App.D.C. 191, 330 F.2d 210 (1964) (pensions); *Inland Steel Co. v. NLRB,* 170 F.2d 247 (7th Cir. 1948), *cert. denied,* 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949). Our circuit has concluded that union dues check-off is a mandatory subject. *NLRB v. J. P. Stevens & Co., Inc., Gulistan Div.,* 538 F.2d 1152 (5th Cir. 1976); *Sweeney & Co. v. NLRB,* 437 F.2d 1127 (5th Cir. 1971); *accord Caroline Farm Div. of Textron, Inc. v. NLRB,* 401 F.2d 205 (4th Cir. 1968).

It is clear from a perusal of these cases that the issues qualifying as mandatory subjects of bargaining are very diverse. However, a common theme seems to run throughout; the qualifying subjects benefit all of the members of the bargaining unit through encouraging the collective bargaining process and vitally affecting the relationship between the employer and employees.

The Board, in its decision, emphasized the similarity of the benefits inuring to the Union members in the instant case with those involved in the presentation of grievances.[5] It advances the theory that effec-

---

**5.** "We see no distinction between an employee's involvement in contract negotiations and involvement in the presentation of grievances. In one situation an employee is im-

tiveness of the collective bargaining process will be greatly diminished by permitting companies through unilateral action to discourage seasoned and well qualified union representatives from participating in collective bargaining. The Board argues that many highly skilled union negotiators will be reluctant to continue to serve on the committee if they are required to negotiate only during off-time or lose their production pay. These arguments do not fall on deaf ears. We are not unaware of the reluctance a person might have to make such sacrifices. The similarity of an employee's attempt to improve contract terms or conditions of employment through collective bargaining with an employee's attempt to insure implementation of a contract term or condition of employment does not go unnoticed.

Keeping in mind the necessary deference accorded the Board's statutory interpretation, we are persuaded that the Board's conclusion that the instant case involved a mandatory subject of bargaining is "legally defensible and factually acceptable." *Iron Workers, supra.*

Of course this does not mean that all employers must henceforth furnish remuneration for members of the collective bargaining unit for the time they spend in negotiation. It means merely that the union and company must bargain on that subject. *NLRB v. J. P. Stevens & Co., Inc., Gulistan Div., supra.*

■ Having determined that the remuneration of employee negotiators for their loss of work time is a mandatory subject of bargaining, we must now ascertain whether the Board's determination that petitioner violated the Act is supported by substantial evidence. It is well settled that we are compelled, under our limited scope of review, to sustain the Board's determination

of a question of fact if the record as a whole supports the findings by substantial evidence. *Allied Chemical & Alkali Workers v. P.P.G.*, 404 U.S. 157, 171, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965); *NLRB v. Gulf-Wandes Corp.*, 595 F.2d 1074 (5th Cir. 1979).

We, in accord with the Board, are unpersuaded by petitioner's argument that the relevant provisions of the contract were only intended to encompass the payment of production time spent in handling grievances and excluded coverage of time spent in negotiations. We believe the clear language of the provisions substantially supports the interpretation by the Board that committee members would be remunerated for the time spent in negotiations. This interpretation is consistent with the past practices of the parties when, under similar contract provisions, the committee members were remunerated for time spent in negotiations.

The evidence unmistakably establishes the past practice by the parties of negotiating during working time and the payment of the committee members by the Company for the time they missed from their work shift.

To prevent needless lengthening of this decision, it should suffice to say that the record on the whole clearly established that in all negotiations from 1963 through 1973, with no information available as to the 1969 session, all members of the shop committee representing the Union had been compensated by the Company for the production they missed because of the negotiations. This evidence goes far beyond the requisite "substantial evidence" necessary to uphold the Board's determination as to the past practices of the parties on the relevant issue. *Allied Chemical & Alkali Workers v.*

plementing a contractual term or condition of employment and in the other situation an employee is attempting to obtain or improve contractual terms or conditions of employment. In both situations the activity is for the benefit of all of the members of the bargaining unit. Accordingly, we find that the payment of wages to employees negotiating a

collective-bargaining agreement 'constitutes an aspect of a relationship between the employer and employees' and is, therefore, a mandatory subject of bargaining." (footnote omitted)

Decision and Order of the Board. Record at 117–118.

96

*P.P.G.*, 404 U.S. 157, 171, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); *NLRB v. Brown*, 380 U.S. 278, 291, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 474, 95 L.Ed. 456 (1950).

Petitioner also advances the theories of contract waiver and estoppel as defenses. We do not feel the conduct of the Union in any way approached the requisite of a "clear and unmistakable" waiver of the statutory right to bargain over a mandatory subject sanctioned by this circuit. *NLRB v. Item Co.*, 220 F.2d 956 (5th Cir. 1955), *cert. denied*, 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746 (1955). We are unable to find any merit in the additional issues raised by petitioner. Accordingly, we direct that the Board's order be enforced.

ENFORCED.