**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, LOCAL 2096, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

Nos. 82–1897(L), 83–1894.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1984.

Decided July 12, 1984.

**634**

William J. Stone, Asst. Gen. Counsel, Washington, D.C. (Mark D. Roth, Acting Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, D.C., on brief), for petitioner.

Robert J. Englehart, Washington, D.C. (Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., Washington, D.C., on brief), for respondent.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and KNAPP,* Senior District Judge.

MURNAGHAN, Circuit Judge:

Appellant American Federation of Government Employees, Local 2096 ("Union") appeals the decisions of the Federal Labor Relations Authority ("FLRA") in *U.S. Naval Space Surveillance Systems, Dahlgren, Virginia* and *U.S. Naval Surface Weapons Center, Dahlgren, Virginia,*[1] which dismissed complaints alleging that the employers, the United States Naval Surface Weapons Center ("Weapons Center") and the United States Naval Space Surveillance System of the Navy ("USNSSS") had violated the federal Labor-Management and Employee Relations Act ("Act"), 5 U.S.C. § 7101 *et seq.*, in connection with certain collective bargaining procedures. Specifically, USNSSS and the Weapons Center had refused to allow the Executive Vice President of the Union, Mr. Ezra Green, a Weapons Center employee, paid leave on "official time" for his participation in contract negotiations between the Union and USNSSS. The Union also appeals the finding by FLRA that the Weapons Center had no duty to bargain on the issue of providing official time to non-bargaining unit members who choose to serve as negotiators for the unit.

The Union initially complained that both the Weapons Center and USNSSS had committed unfair labor practices by interfering with employees' exercise of rights under the Act and by refusing to negotiate in good faith with a properly certified labor organization.[2] Although the Weapons Center and USNSSS each operate out of the Naval Center in Dahlgren, Virginia, the parties have stipulated that they are conducted as separate activities and report through separate chains of command to the Chief of Naval Operations. The Union had been certified as the exclusive bargaining representative for both activities, however.

Contract negotiations between USNSSS and the Union began on October 14, 1980, and Green participated in those negotiations even though the Weapons Center and USNSSS repeatedly refused his requests for paid official time, travel, and per diem expenses. Thus, the Union complaint also

---

* The Honorable Dennis R. Knapp, Senior United States District Judge for the Southern District of West Virginia, sitting by designation.

1. FLRA first issued a "Decision and Order" on June 23, 1982, 9 F.L.R.A. No. 30 (1982), which was then followed by a "Decision and Order upon Reconsideration" on August 31, 1983, 12 F.L.R.A. No. 140 (1983).

2. *See* 5 U.S.C. § 7116(a)(1), (5) and (8), which provide:

§ 7116. Unfair labor practices
(a) For the purpose of this chapter, it shall be an unfair labor practice for an agency—
(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter; ...
(5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter; ... [or]
(8) to otherwise fail or refuse to comply with any provision of this chapter.

contained specific allegations that USNSSS violated 5 U.S.C. § 7131(a), which provides that "[a]ny employee representing an exclusive representative in the negotiation of a collective bargaining agreement ... shall be authorized official time for such purposes...." USNSSS' chief negotiator, Mr. Edward Resio, likewise refused to bargain over a Union proposal that would permit non-unit members to negotiate on "paid time" status.[3]

In its initial decision issued on June 23, 1982, FLRA dismissed the complaint against USNSSS, since it was not an employer of Green,[4] and held that the Weapons Center had not violated the Act by refusing to afford Green official time, since FLRA precedent established that "the official time entitlement under section 7131(a) accrues only to an employee who is within the bargaining unit involved in the negotiations." 9 F.L.R.A. No. 30 at 3. Nonetheless, the Union prevailed on its claim that the Weapons Center had violated its duty to bargain in good faith by Resio's refusal to bargain over the Union's proposal that non-unit negotiators be granted official time. *Id.* at 4. Upon reconsideration of pertinent precedent, FLRA determined in its decision of August 31, 1983 that because "the Weapons Center and the [Union] were not engaged at all in the negotiation of a collective bargaining agreement involving conditions of employment affecting any Weapons Center employee [since] only USNSSS, a completely separate activity, was engaged in negotiations with the Union," the Weapons Center had not breached any duty to bargain. 12 FLRA No. 140 at 3.

■ We are convinced that FLRA's ultimate decision in its ruling of June 23, 1982,

as modified by the ruling of August 31, 1983, was not contrary to law, but rather was wholly correct. Especially since FLRA "is entitled to considerable deference when it exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations,"[5] this court is particularly hesitant to disturb FLRA's construction of the Act as precluding official time for non-unit negotiators. We must "decide all relevant questions of law [and] interpret constitutional and statutory provisions," reversing the agency's decision only if its findings are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[6] The agency interpretation in this case easily passes appellate review.

■ Relevant portions of the Act provide that "collective bargaining" is "the performance of the mutual obligation of the representative of an agency and the exclusive representative of *employees in an appropriate unit in the agency* to meet ... and to consult and bargain in a good-faith effort to reach agreement...." 5 U.S.C. § 7103(a)(12) (emphasis added). The exclusive representative is to be selected "by a majority of the *employees in an appropriate unit*," 5 U.S.C. § 7111(a) (emphasis added), with such representation designed to enhance "the right of employees to organize, bargain collectively, and *participate* through labor organizations of their own choosing *in decisions which affect them*...." 5 U.S.C. § 7101(a)(1) (emphasis added). It is apparent that the plain language and overarching statutory intent of the Act are designed to emphasize the rights of employees within a given bargaining unit. Thus, the entitlement to official time under section 7131(a) properly applies only to employee-negotiators who are them-

---

**3.** Although Resio was employed as head of the Weapons Center's Labor and Employee Relations Department, he was acting as chief negotiator for USNSSS.

**4.** That dismissal order is not challenged on appeal.

**5.** *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* — U.S. —, —, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). That case reversed the FLRA's finding that 5 U.S.C. § 7131(a) included

per diem and travel expenses for union negotiators as part of the "official time" expenses to be reimbursed. At the same time, the Supreme Court noted that a court of review "should uphold reasonable and defensible constructions" of the agency's enabling act. *Id.*

**6.** 5 U.S.C. § 706, Administrative Procedure Act, made applicable as the standard of review in the Labor-Management and Employee Relations Act at 5 U.S.C. § 7123(c).

selves members of the unit, and who are working to negotiate reasonable solutions to conditions of employment that directly affect the unit.

The Union seeks to read the provision of section 7131(a) that "[a]ny employee representing an exclusive representative ... shall be authorized official time" (emphasis added), as requiring official time for non-unit negotiators. Such a construction would seize upon the word "any" in isolation from the overall context of the Act, however. Since "employee" is defined as an individual actually "employed in an agency," 5 U.S.C. § 7103(a)(2), the employer-employee nexus would seem to control and to emphasize the importance of unit membership as a prerequisite for official time.

By recognizing that "all parts of the statute must be read together, [not] taking specific words out of context,"[7] we conclude that the most reasonable analysis of the entire text of the Act reveals a congressional intent that only unit members (who are, after all, those in the best position to represent unit rights) be afforded paid official time for negotiating under 5 U.S.C. § 7131(a). As FLRA recognized in *United States Air Force and Wright-Patterson AFB Fire Fighters Local F-88*, 7 F.L.R.A. No. 118 (1982), such a restricted entitlement under section 7131(a) reflects Congress' desire that collective bargaining "operate within a framework of appropriate bargaining units in which employees, through their exclusive representative, can participate in decisions which affect them." *Id.* at 3.

■ As for the Union's claim that the Weapons Center violated its duty to bargain in good faith on the issue of official time for non-unit negotiators, it is true that in *Wright-Patterson*, FLRA specifically declined to decide the matter. *See Id.* at 5 n. 8 ("This decision concerns only entitlements to official time under section 7131(a), and does not address official time which may be negotiated under section 7131(d)"). But by not deciding, and by leaving resolution until the day when it must be resolved,

FLRA cannot be deemed to have expressed its policy one way or the other. With the question inescapably presented in this case, FLRA's decision that the Weapons Center did not breach any duty to bargain is well founded.

As a threshold matter, it is important to remember that the contract negotiations at issue were between the Union and USNSSS: since the Weapons Center was not involved in contract negotiations at all, it could hardly be faulted for refusing to bargain in good faith or otherwise. While 5 U.S.C. § 7131(d) does provide that "any employee representing an exclusive representative ... shall be granted official time," reimbursement is to be made "in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest." In the instant case, the Weapons Center does not fall within the ambit of the term "agency" as used in context, but rather falls wholly outside the collective bargaining scenario between the Union and USNSSS.

As noted above, a commonsense reading of the Act reveals the congressional focus upon the employee unit/employer nexus as setting the stage for productive collective bargaining. To force the Weapons Center into the USNSSS/Union dialogue would be to ignore both that central nexus and the very definition of collective bargaining: "the performance of the *mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency* to meet ... and to consult...." 5 U.S.C. § 7103(a)(12) (emphasis added).

Moreover, subsection (d) of 5 U.S.C. § 7131 appears on its face to expand the types of activities for which official time may be granted, not the classes of employee-negotiators who may receive reimbursement. The subsection reads in full:

(d) Except as provided in the preceding subsections of this section—

(1) any employee representing an exclusive representative, or

(2) in connection with any other matter covered by this chapter, any em-

---

**7.** *United States v. Snider*, 502 F.2d 645, 652 (4th    Cir.1974).

ployee in an appropriate unit represented by an exclusive representative, shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest.

Since subsections (a), (b), and (c) deal with time spent on actual contract negotiations, impasse proceedings, and proceedings before FLRA, subsection (d) is most logically read as enabling an employer and union to negotiate for other types of official time allowances. For example, official time could be granted for grievance processing or investigation, should the parties so choose. Nonetheless, since the Weapons Center was itself no party to the ultimate contract, no duty to bargain on the issue could be imposed on it. The interpretation for which the Union argues would require negotiation over official time for a Dahlgren, Virginia Navy employee engaged in negotiations with an employer at an altogether separate and distinct naval activity located in Seattle, Washington. We simply are not convinced that Congress so intended.

As the Supreme Court recently noted in *Bureau of Alcohol, Tobacco and Firearms v. FLRA, supra,* the Act was not intended to "confer on the FLRA an unconstrained authority to equalize the economic positions of union and management." 104 S.Ct. at 449. While Congress could have drafted an explicit provision that non-unit negotiators be granted official time, it did not choose to do so. Thus, while management and labor are both free to establish and employ their own cadres of professional negotiators at their own expense, the Union in this case may not use the official time provisions of 5 U.S.C. § 7131(a) or (d) to compel employer subsidization of non-

unit negotiators.[8] This result is wholly in keeping with the recognition that the Act was premised upon "the basic assumption underlying collective bargaining in both the public and the private sector that the parties 'proceed from contrary and to an extent antagonistic viewpoints and concepts of self-interest.'" *Id.* (Citation omitted).

Thus, because FLRA's decision of June 23, 1982, as modified by the decision of August 31, 1983, is a "reasonable and defensible" construction of the Act, the ruling of the agency is

AFFIRMED.

---

**8.** Indeed, one can imagine a scenario in which there would develop a group of federal employees who did nothing but negotiate contracts, moving from unit negotiation to unit negotiation while being reimbursed for official time all along. While this result may be desirable from a policy standpoint, there is no indication that Congress ever intended such a result. *Compare Axelson, Inc. v. NLRB,* 599 F.2d 91, 95 (5th Cir.1979) (the Court construes the National Labor Relations Act dealing with non-governmental employers as requiring that an employer bargain on the subject of paid time for employee-negotiators who are actually members of the unit, since "seasoned and well qualified union representatives" are desirable participants in collective bargaining).