NATIONAL EXPOSITIONS, INC.,
Plaintiff, Appellant,

v.

CROWLEY MARITIME CORPORATION, Defendant, Appellee.

No. 86–2025.

United States Court of Appeals,
First Circuit.

Argued May 8, 1987.

Decided July 24, 1987.

David Rive-Rivera with whom Vargas & Rive, Hato Rey, P.R., was on brief, for plaintiff, appellant.

Luis Sanchez-Betances with whom Kermit Ortiz-Morales and Sanchez-Betances & Sifre, Hato Rey, P.R., were on brief, for defendant, appellee.

Before BREYER and TORRUELLA, Circuit Judges, and CAFFREY,* Senior District Judge.

BREYER, Circuit Judge.

National Expositions, Inc., the appellant, entered into a contract with Crowley Maritime Corp., the appellee, under which Crowley would transport two bargeloads of National's carnival equipment from Maracaibo, Venezuela to Jacksonville, Florida. Crowley sent a tug and barge to pick up the equipment, but Venezuelan authorities would not allow the equipment to leave the country. The equipment stayed, the boats left, and National sued. This appeal involves National's suit against Crowley for the return of $300,000 which it had already paid for the transport.

In the court below, National based its claim upon its written contract with Crowley. Article 3 of that contract says that Crowley's payment "shall be fully and irrevocably earned upon tender of the barge for loading at Venezuela." National, moving for summary judgment, argued that, since the boat did not dock, there was no "tender." Crowley, in opposing summary judgment, conceded that the barge did not dock, but claimed that it had "tendered" the barge by bringing it into the harbor. The only reason the barge did not dock, Crowley added, was because the port authorities, who wanted to keep the cargo in the country, would not let it do so.

* Of the District of Massachusetts, sitting by designation.

The district court, after reading the affidavits and supporting material, saw no "genuine" and "material" issue of fact. Fed.R.Civ.P. 56(c). It accepted Crowley's interpretation of the word "tender" in the contract, it denied National's motion for summary judgment, and, acting *sua sponte*, it entered a partial summary judgment in favor of Crowley.

The parties then filed cross-motions for summary judgment on two other issues. First, National sought the return of $75,-000 under Article 19C of the contract, which says:

> In the event that it does become necessary, in fact, to leave Maracaibo without the carnival equipment, carrier shall refund an amount not to exceed $75,000.00 to shipper subject to deductions for demurrage on tug and barge, demurrage on trailers supplied by TMT and any other port expenses, fines and/or penalties incurred as a result of the vessels' call at Maracaibo.

Second, Crowley, counterclaiming, sought damages under other language of Article 3, which says:

> Shipper shall pay Carrier demurrage for any delay occurring by reason of shipper failing to deliver the cargo to Carrier at the port of loading as fast as the vessel can receive the cargo, failure to obtain necessary flag waivers and other exportation permits from the Venezuelan Government. Demurrage rate shall be $9,500.00 per day or fraction of a day.

The district court found, on the basis of affidavits and supporting material, that Crowley's deductions under Article 19C (not counting tug and barge demurrage) exceeded $75,000 and that Crowley was entitled to $38,000 for tug and barge demurrage under Article 3. Accordingly, the court entered judgment for $38,000 in favor of Crowley.

National now appeals the district court's judgments. It does not attack the court's interpretation of the relevant contractual language; we therefore assume that that interpretation is correct. Instead, National makes the following arguments.

First, National says that the district court should not have entered summary judgment on the main issue for Crowley *sua sponte*. It concedes, as it must, that a district court has the legal power to render "summary judgment ... in favor" of the party opposing a summary judgment motion "even though he has made no formal cross-motion under rule 56." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720, at 29–30 (1983); *see Pueblo of Santa Ana v. Mountain States Telephone & Telegraph Co.*, 734 F.2d 1402, 1408 (10th Cir.1984), *rev'd on other grounds*, 472 U.S. 237, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir.1982); *Local 33, International Hod Carriers Building and Common Laborers' Union v. Mason Tenders District Council of Greater New York*, 291 F.2d 496, 505 (2d Cir.1961). But, it notes that the Supreme Court, in describing this procedural rule, has said that "the losing party" must be "on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *cf. Preterm, Inc. v. Dukakis*, 591 F.2d 121, 134 (1st Cir.) (requiring notice and opportunity to respond before court may dismiss case *sua sponte* on the basis of the complaint), *cert. denied sub nom. Preterm, Inc. v. King*, 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979), *app. dismissed sub nom. King v. Preterm, Inc.*, 448 U.S. 901, 100 S.Ct. 3039, 65 L.Ed.2d 1131 (1980); *Literature, Inc. v. Quinn*, 482 F.2d 372, 374 (1st Cir.1973) (same). And, National adds, it had no such notice here.

The problem with National's argument is that being "on notice" does not mean that it had to receive a formal document called "notice" or that the district court had to say the words "you are on notice" or even that the court had to explicitly tell National, "I am thinking of ordering summary judgment for Crowley *sua sponte*." Rather, the question is whether, given the procedural circumstances of the case, "the original movant [i.e., National] has had *an adequate opportunity* to show that there is a genuine issue and that his opponent is

not entitled to judgment as a matter of law." 10A C. Wright, A. Miller & M. Kane, *supra*, § 2720, at 34 (emphasis added); *see Lindsey v. United States Bureau of Prisons*, 736 F.2d 1462, 1463–64 (11th Cir.), *vacated and remanded on other grounds*, 469 U.S. 1082, 105 S.Ct. 584, 83 L.Ed.2d 695 (1984); *Cool Fuel, Inc. v. Connett*, 685 F.2d at 312; *McKenna v. Peekskill Housing Authority*, 497 F.Supp. 1217, 1219–20 (S.D.N.Y. 1980), *rev'd in part on other grounds*, 647 F.2d 332 (2d Cir.1981).

Here, National's opportunity was more than adequate. For one thing, the pleadings, the prior proceedings, National's own summary judgment motion, the attached affidavits, and Crowley's opposition and supporting material all made clear, in context, that, as the parties saw the legal issues, the only relevant facts were 1) that the tug arrived in Maracaibo, 2) that it did not dock, and 3) that the Venezuelan authorities would not let it dock because they would not permit the cargo to leave. National addressed these points repeatedly, using what appears to be every bit of supporting evidence in its possession. No one reading the record could believe that National had other supporting factual material that it did not present to the court.

For another thing, National had adequate opportunity to ask for reconsideration, calling to the court's attention a) any other supporting factual material in its possession or b) reasons why it needed additional time to find such material. *See* Fed. R.Civ.P. 56(f). National moved for reconsideration; it announced that it would provide more factual material, but it did not say what that material was. Indeed, its brief on this appeal, filed almost two years later, contains no indication that there is any such factual material in its possession or any reason to believe that it might find some. Rather, National points only to an affidavit of its President Ronald Sanders, which in all relevant respects is identical to an affidavit that the court had before it prior to its grant of summary judgment. This affidavit says that "[t]here was no legal entanglement preventing the loading of cargo," but it also concedes the relevant point, namely that the Venezuelan authorities refused to permit loading of the cargo.

The affidavit makes clear that National does not deny that Venezuelan authorities refused to let the cargo leave; rather, it says that "[t]he port officials' refusal to allow [the loading of the vessel] was illegitimate and Crowley through William Coleman told me that the port officials were acting improperly and illegally". Under the district court's interpretation of the contract, however, the legality of the refusal is beside the point; it had nothing to do with the matter of "tender." In sum, National has had more than adequate opportunity to show a "genuine" and "material" issue of fact, but it has failed to do so.

■ Second, National says that there are "genuine" issues of fact "material" to the question of whether Crowley incurred more than $75,000 in expenses deductible from the $75,000 refund to which the contract would otherwise entitle National and to the question of whether the contract entitled Crowley to an additional $38,000 for demurrage. In its brief, National mentions three such issues.

a) National points out that Crowley, in respect to trailers, can deduct only "demurrage on trailers supplied by TMT." Article 19C. It says that "a factual issue exists as to whether the trailers for which the 'expenses' were claimed were supplied to National." But, National points to nothing that tends to refute the fact that Crowley "tendered" several trailers to National along with the tug and barge. Nor does it deny that the trailers in question were those "supplied" (presumably to Crowley) by a company called TMT, or that the expenses claimed by Crowley were "incurred as a result of the vessels' call at Maracaibo." The contract does not say that Crowley has to succeed in delivering the trailers to National; it speaks only (in Article 3) of Crowley's obligation to "tender" the transport equipment. We see no relevant dispute.

b) National says that a "factual issue exists as to whether Crowley's tug and barge ever reached Maracaibo as required in compliance with Crowley's obligation under the contract." The appendix material that National cites, however, refers only to the tug's failure to dock and to National's view that the port authorities' refusal to

allow loading was unlawful—both factual questions that are irrelevant under the court's unchallenged interpretation of the contract.

c) National says that a "factual issue exists as to what was the actual meeting of the minds of Crowley and National as to the right to refund for demurrage." The material that National cites, however, consists of the statement in Sanders' affidavit that he thought the contract meant that the trailer rental "would be deducted" only if National "used" the trailers, and that National "never used" any of them. The contract, however, does not say that National had to use the trailers; the contract cannot plausibly be interpreted to imply such a requirement. The district court's interpretation of the contract on this point thus is plainly correct.

■ In sum, National points to no "genuine" and "material" issues of fact. Indeed, although the factual background of this case is complicated, it is apparent from our reading of the record that the legal issues that National raises on this appeal are frivolous. For this reason, we assess National double costs. *See Natasha, Inc. v. Evita Marine Charters,* 763 F.2d 468, 471–72 (1st Cir.1985).

The judgment of the district court is *Affirmed.*