**GENERAL BATTERY INTERNATION-AL CORP., Plaintiff,**

v.

**UNION de SERVICIOS Y MANTENI-MIENTOS INDUSTRIALES de P.R., Defendant.**

**Civ. No. 87–0092 (JAF).**

United States District Court,
D. Puerto Rico.

Jan. 20, 1988.

Arturo Bauermister, Fiddler Gonzalez & Rodriguez, San Juan, P.R., for plaintiff.

Defendant in default.

OPINION AND ORDER

FUSTE, District Judge.

This is an action under Section 301 of the Labor Management Relations Act, 29 U.S.C. sec. 185, to vacate an arbitration award. The arbitrator ruled that the employer must comply with a clause of the Collective Bargaining Agreement ("agreement") between the parties that requires the employer to pay a .25 cent an hour bonus to the union steward.

The parties submitted the matter to the arbitrator based upon stipulated facts. They requested him to determine whether, based upon applicable law, the employer must comply with the clause. The arbitrator ruled in the union's favor, and the employer appealed. Before the court is the plaintiff's motion for summary judgment, which is submitted on the identical facts. The defendant is in default, and has not responded to the motion for summary judgment. We enter summary judgment *sua sponte* for the non-moving defendant, and affirm the decision of the arbitrator.

I.

The plaintiff, General Battery International Corporation ("Battery"), and the defendant, Unión de Servicios Y Mantenimiento Industrial de P.R. ("Unión"), entered into a three-year agreement on July 12, 1984, which covered all of its workers in its Carolina plant. Article XXXV, subparagraph E, of the agreement provided that the principal and sub-steward would receive a .25 cent per hour bonus:

> For the duration of this Agreement the principal delegate will receive a bonus of twenty five ($0.25) cents per hour and the sub-delegate will receive a bonus of twenty five ($0.25) cents for each hour worked.

The duties of the principal delegate and sub-delegate under the agreement are to assist in resolving claims and grievances charged by union members against management. Article VIII of the agreement outlines the grievance procedure. Both the principal and sub-delegate (steward), as well as two company officials, are members of the Claims and Grievances Committee. The aggrieved employee takes his problem to his immediate supervisor, either by himself, or with the principal delegate. If the supervisor has not resolved the problem within 48 hours, the union, principal delegate or the employee may file a grievance before management. The grievance is then discussed by management, the Grievance Committee, the grievant, and a union representative, and the management has 5 days to make a decision. If the decision is unsatisfactory to either the union or the affected employee, then either may elect to submit the grievance to binding arbitration. *See* Collective Bargaining Agreement, Article VIII. The principal steward has no other responsibilities as a steward under the agreement, and similarly, receives no seniority or other benefits.

In January of 1986, Roberto Rivera became the principal steward, and Battery admits it has never paid him the bonus. Pursuant to the parties' agreement requiring binding arbitration to settle grievances, Unión filed an arbitration case in the Bureau of Conciliation and Arbitration of the Department of Labor of Puerto Rico, alleging that Battery was in violation of the agreement. A hearing was held on December 9, 1986. At the hearing the parties submitted the sole legal issue to be decided:

> Determine in accordance with applicable law, if the company is or is not obligated to pay twenty-five cents (.25) bonus per hour worked to Mr. Roberto Rivera, Union Steward.

On December 19, 1986, the arbitrator upheld the validity of the clause, ordered enforcement, and ordered Battery to pay retroactively all the money owed Mr. Rivera for the hours worked. The arbitrator found that the purpose of the bonus is "to compensate ... possible economic losses that he might incur by dedicating part of his working hours to performing tasks inherent to" his position of union steward.

## II.

■ Where the parties have agreed to binding arbitration as the method for settling grievances, "the arbitration award is normally non-reviewable by a court." *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1048 (1st Cir.1977). "[A]bsent unusual circumstances, [the parties] are bound by the outcome of said proceedings." *Posadas de Puerto Rico Associates, Inc. v. Asociación de Empleados de Casino de Puerto Rico*, 821 F.2d 60, 61 (1st Cir.1987). The reviewing court may vacate an arbitration award only if the arbitrator's interpretation of the collective bargaining agreement is

> unfounded in reason and fact, is based on reasoning so palpably faulty that no judge or group of judges could ever conceivably have made such a ruling, or is mistakenly based on a crucial assumption which is concededly a non-fact.

*See In Re Hotel Da Vinci, Inc.*, 797 F.2d 33, 34–35 (1st Cir.1986).

The Supreme Court recently reaffirmed this very limited role the courts may take in reviewing an arbitration award under a collective bargaining agreement. In *United Paperworkers v. Misco*, —— U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the Court addressed when a court may set aside arbitration awards as contrary to public policy. The Court held that the award of the arbitrator, which ordered the reinstatement of an employee fired for drug use, was entitled to enforcement, and reversed the Fifth Circuit Court of Appeals. The Court said that the appeals court erred in vacating the award under a public policy against the operation of dangerous machinery while under the influence of drugs, and, assuming such a policy was to be accepted, there was no clear violation shown. The Court held that the appeals court exceeded its authority in reversing the arbitrator:

The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. 'The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.' *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596 [80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424] (1960). As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate. *Id.* at 597 [80 S.Ct. at 1361]. *United Paperworkers v. Misco,* 108 S.Ct. at 370. Under the above standard, the Court held that the appeals court erred in vacating the factfinding of the arbitrator and substituting facts of its own.

### III.

■ Battery contends that enforcement of the award would violate both sections 7 and 8(a)(3)[1] of the NLRA, 29 U.S.C. secs. 157 and 158(a)(3), in that the bonus clause is an incentive for employees to participate in union activities and discriminates against those who wish to refrain from union activities. Section 7 protects the rights of employees to engage in or refrain from union activity. It preserves the employee's right to be a "good, bad, or indifferent" union member. *See Radio Officers' Union v. N.L.R.B.,* 347 U.S. 17, 40, 74 S.Ct. 323, 335, 98 L.Ed. 455 (1954). Section 8(a)(3) of the NLRA makes it an unfair labor practice "for an employer … by discrimination … to encourage or discourage membership in

any labor organization." 29 U.S.C. sec. 158(a)(3).

Battery argues that under *Dairylea Cooperative Inc.,* 219 N.L.R.B. 656 (1975), *enforced sub nom. NLRB v. Milk Drivers & Dairy Employees, Local 338,* 531 F.2d 1162 (2d Cir.1976) *("Milk Drivers"),* the award violates sec. 8(a)(3). *Milk Drivers* held that under sec. 8(a)(3) it is an unfair labor practice for an employer to grant super-seniority benefits to union-selected stewards with regard to route selection, overtime assignments, vacation time, shift, hour and day-off selection. However, superseniority with regard to layoff and recall is lawful if extended to union officers involved in on the job contract administration, such as grievance processing, *Gulton Electro–Voice, Inc.,* 266 N.L.R.B. 406, *enforced, Local 900, Int'l Union of Elec., Etc. v. N.L.R.B.,* 727 F.2d 1184 (D.C.Cir. 1984). However, some discriminatory treatment may be allowed when a "substantial and legitimate business purpose is served," *See NLRB v. Brown,* 380 U.S. 278, 289, 85 S.Ct. 980, 987, 13 L.Ed.2d 839 (1965).

■ In upholding the bonus clause, the arbitrator found that the purpose of the bonus was to offset the losses a steward might incur in missing his hourly job duties by attending to union activities. This finding is not unfounded in reason and fact, it is not so palpably faulty that no judge or group of judges could have made such a ruling, and it is not based on a non-fact. *See In Re Hotel Da Vinci,* 797 F.2d 33, 34–35 (1st Cir.1986). Furthermore, the finding is entirely reasonable when read with the provision in the agreement that requires a principal delegate, when attending a worker's grievance, to "notify his immediate supervisor in order to leave temporarily the work he is doing for the time it is necessary to attend to the problem or

---

1. Because this action is under sec. 301, this court's jurisdiction is not preempted by the primary jurisdiction of the National Labor Relations Board (NLRB). When a labor activity is arguably protected by sec. 7 or prohibited by sec. 8 of the National Labor Relations Act, the state and federal courts must defer the action to the NLRB. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779,

3 L.Ed.2d 775 (1959). However, sec. 301 suits involving the interpretation of collective bargaining agreements are excepted from the *Garmon* doctrine. *See Motor Coach Employees v. Lockridge,* 403 U.S. 274, 300, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971); *Smith v. Evening News Assoc.,* 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962).

related matters." *See* Art. XIV(2)(a). Afterwards, he must "return to his work, if his shift is not yet over." Art. XIV(2)(c). As can readily be seen, this award draws its essence from the collective bargaining agreement. *United Paperworkers v. Misco*, 108 S.Ct. at 370.[2] We also note that dicta in *Milk Drivers*, the case the employer principally relies upon, supports the decision of the arbitrator. The court said that "[i]f a union finds that it must offer incentives to attract qualified stewards, it may pay a salary to the stewards, or may give them other non-job benefits." 531 F.2d at 1166.

The arbitrator's decision is further bolstered by sec. 8(d) of the NLRA, which requires the employer and employee representative to bargain "with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. sec. 158(d). Under that section, paid time to union stewards for performance of union duties is a mandatory subject of bargaining. *See, e.g., Axelson, Inc.*, 34 N.L.R.B. 414 (1978), *enforced, Axelson v. N.L.R.B.*, 599 F.2d 91 (5th Cir.1979), and various cases cited therein.

## IV.

The court finds that the decision of the arbitrator is reasonable, is in accord with statutory and case law, and that the decision of the arbitrator is entitled to enforcement. The court therefore denies summary judgment for the defendant, and *sua sponte* grants summary judgment for the plaintiff. Summary judgment is a procedural tool that can ensure early resolution of a case when the material facts, as here, are stipulated, and the applicable law is clear. Rule 56 enables the trial court to determine "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 934 (1st Cir.1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). A district court has the power to enter summary judgment *sua sponte*, "so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In moving for summary judgment, Battery, of course, presented the court all of her evidence in her moving papers. We again note that this case revolves around the legal interpretation of stipulated facts. Entering summary judgment *sua* sponte is appropriate where the only issues concern legal interpretation of existing facts, *see National Expositions v. Crowley Maritime Corp.*, 824 F.2d 131 (1st Cir.1987) (affirmance of *sua sponte* partial summary judgment for damages in contract action). However, entering summary judgment *sua sponte* for the non-moving party is not always appropriate, *see Morales v. Arias*, 834 F.2d 255 (1st Cir.1987) (reversal of *sua sponte* summary judgment on damages and reinstatement in political discharge case).[3]

2. Because in our limited review we affirm the arbitration award, we need not reach the issue of whether enforcement of the award would violate secs. 7 or 8(a)(3). Furthermore, we would be unable to decide that issue, because that would be under the primary jurisdiction of the NLRB. *See supra,* n. 1; *see also, San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

3. Both *National Expositions v. Crowley Maritime Corp.* and *Morales v. Arias, supra,* dealt with the appeals of summary judgment entered *sua sponte.* In *National Expositions,* the court, citing *Celotex Corp. v. Catrett, supra,* recognized the power of the district court to enter summary judgment *sua sponte,* and outlined the issues involved. It said the issue of notice was whether, "given the procedural circumstances of the case, 'the original movant has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law.'" (citations omitted). However, later in *Morales v. Arias,* without reference to *Celotex,* the court held that entering summary judgment *sua sponte* was error, and said that "[t]he district court then went on to grant summary judgment in the plaintiff's favor ... (even though the plaintiff had not asked for summary judgment on the merits)." At 256.

Judgment will be entered for the defendant.

IT IS SO ORDERED.