UNITED STATES DEVELOPMENT CORPORATION, Plaintiff–Appellant,

v.

PEOPLES FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant–Appellee.

No. 88–3634.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1989.

Decided April 28, 1989.

Douglas Kent Barth (David S. Morris, Ward & Smith, P.A., Greenville, N.C., on brief), for plaintiff-appellant.

Michael Warner Battle, Sr. (Lovelace & Battle, P.A., Conway, S.C., Carter T. Lambeth, Johnson and Lambeth, Wilmington, N.C., on brief), for defendant-appellee.

Before HALL, CHAPMAN, and WILKINSON, Circuit Judges.

K.K. HALL, Circuit Judge:

United States Development Corporation ("USDC") appeals the district court's order granting summary judgment on its original contract and deceptive trade practice claims and on its subsequently added contract claim against Peoples Federal Savings & Loan Association ("Peoples"). Finding no error as to the original claims, we affirm that portion of the district court's order. Finding that summary judgment was pre-

mature on the added claim, we reverse that portion of the order and remand.

## I.

This dispute arises out of a rather complicated transaction which secured the financing for Belvedere Plantation, a 695–acre real estate development in Pender County, North Carolina. On May 2, 1979, Peoples loaned USDC 1.3 million dollars to develop the property. As security, USDC gave a deed of trust for all real and personal property it owned in the development.[1]

Because USDC was short on cash, it conveyed in fee, subject to a buy-back agreement, 17 residential lots in the development ("points lots") to Peoples in payment of the $150,000 in discount points on the loan. Peoples agreed to sell the lots back to USDC for the amount of the points if USDC bought them within 24 months of closing. If the lots were not purchased by the end of this period, Peoples agreed to sell them to USDC for $200,000, provided that the purchase was made within 36 months of closing. Failure to purchase the lots within three years automatically rendered the buy-back agreement void.

Although the parties had attempted negotiations, the three-year deadline in the agreement, May 2, 1982, came and went with no purchase having been made. Negotiations continued through the summer, concluding in an agreement which allowed USDC to finance the $200,000 repurchase price through sales of the points lots to individual purchasers. The terms of the agreement were memorialized in a one-page letter dated September 10, 1982, sent from Peoples to USDC. The entire text of the agreement is as follows:

> This will confirm our earlier conversations in which Peoples agreed to convey our "points lots" to individual purchasers once paid the higher of 60% of the sales price of the lot or 60% of the Peoples appraised value of the lot. This money received will be applied to the $200,000 U.S.D.C. byuback [sic] option on these lots. Once $200,000 plus interest at 18%

from May 2, 1982 on the unpaid portion of the $200,000 plus any property taxes already paid or to be paid by Peoples on the points lots (in accordance with the addendum to the original Peoples commitment letter on the Belvedere development) has been paid, Peoples will reconvey the remaining points lots held to U.S.D.C. In the event that four lots per calendar quarter are not sold, Peoples will have the right to unilaterally withdraw from the program.

USDC sold the requisite four lots the first calendar quarter; however, it failed to meet the quota in each subsequent quarter. In July, 1984, Peoples notified USDC that it was exercising its unilateral right to withdraw from the program and planned to take the twelve remaining points lots, package them as one large tract, and offer them on the open market for $500,000. Peoples offered the lots to USDC at that price. After a second letter from Peoples concerning the withdrawal, USDC responded that it considered Peoples' withdrawal and offer of sale a breach of the September 10, 1982, letter agreement and that it stood ready to sign a note for the remainder of the $200,000 price plus interest. Peoples rejected this offer. USDC next offered Peoples $265,458.79 in cash for the lots. Peoples declined.

On July 31, 1987, USDC filed this diversity action. It averred three counts in its original complaint. Count One alleged that Peoples had violated the letter agreement by refusing to sell the lots for the contract price. Count Two alleged that the original 1979 buy-back agreement was really in the nature of an option which was amended or superseded by a new option created by the 1982 letter agreement. Count Three alleged a violation of Chapter 75, N.C.Gen. Stat., unfair or deceptive acts or practices in or affecting commerce, and sought treble damages.

On March 2, 1988, after extensive discovery by both parties, Peoples moved for summary judgment on all of USDC's claims. On April 11, 1988, USDC opposed the motion and filed a motion for leave to

---

1. This loan has been paid back in full.

amend its original complaint and allege a new count. The proposed fourth count averred that the original 1979 conveyance of the points lots was not an outright conveyance in fee coupled with the buy-back agreement, but actually was a loan for the amount of the discount points secured by a deed of trust on the lots. Accordingly, USDC maintained that it was the owner of the equity of redemption in the points lots and that upon payment of the remaining indebtedness the lots must be conveyed to it.

Peoples filed nothing in opposition to USDC's motion to amend; nor did it seek summary judgment on the proposed fourth count. With the case in this posture, the district court by order dated September 1, 1988, simultaneously granted USDC's motion for leave to amend and Peoples' motion for summary judgment on the original complaint. The court ruled that the plain language of the 1982 letter agreement gave Peoples the right to withdraw from the agreement in the event that USDC defaulted on its sales obligation. The court reasoned that because USDC admitted its default, it was in no position to sue on the contract. The court dismissed USDC's deceptive trade practice claim on the same grounds, i.e., that Peoples could not have employed a deceptive practice in withdrawing from an agreement the plain terms of which gave Peoples that right. Finally, the court entered summary judgment *sua sponte* on USDC's claim based on the original 1979 agreement, holding that it added nothing new to the claims alleged in the other counts. It is from this order that USDC appeals.

## II.

USDC raises three primary assignments of error. First, it maintains that summary judgment was inappropriate on its contract claims which are based on the 1982 letter. USDC contends that there is a genuine issue as to whether Peoples' right to withdraw was actually part of the agreement and, even if it were part of the contract, as to whether the right to withdraw from the "program" meant from the entire agree-

ment or just from the method of financing the $200,000 price. Second, USDC assigns error to the district court's grant of summary judgment against it on its statutory deceptive practices claim. Finally, USDC argues that the lower court erred in granting summary judgment against it on its newly-added contract claim without first giving it notice and an opportunity to be heard. We address these contentions seriatim.

■ Appellant's first contention is easily disposed of. It is axiomatic that summary judgment is appropriate when there exists no genuine issue of material fact for the trier of fact. We agree with the district court that appellant's contract claims on the 1982 agreement present such a situation. The letter was written in clear and unambiguous terms which both this Court and the district court are bound to interpret as written. *Renfro v. Meacham*, 50 N.C. App. 491, 274 S.E.2d 377 (1981); *Five Oaks Homeowners' Assoc., Inc. v. Efirds Pest Control Co.*, 75 N.C.App. 635, 331 S.E.2d 296 (1985). When presented with such a clear expression of the parties' intent, there is no need to look past a contract to resolve a dispute. *Renfro*, 274 S.E.2d at 379. Furthermore, appellant has conceded that it accepted the letter as the embodiment of the parties' agreement. Peoples' right of withdrawal was a prominent part of the contract which was obviously integral to the agreement. Where a party has accepted a contract that is plain in its terms, that party cannot later deny knowledge of the contract's contents. *Five Oaks*, 331 S.E.2d at 299. We agree with the district court that there can exist no question that the right of withdrawal was included in the parties' agreement.

■ Likewise, we agree with the district court that the right to unilaterally withdraw from the "program" is the right to withdraw from the agreement itself, not just from its terms of financing. In construing contracts, ordinary words are given their ordinary meanings. *Biggers v. Evangelist*, 71 N.C.App. 35, 321 S.E.2d 524 (1984), *rev. denied*, 313 N.C. 327, 329 S.E.2d 384 (1985). And, we must interpret

their ordinary meanings in the context in which the words are used, with an eye toward the contract as a whole. *Id.*, 321 S.E.2d at 528. "Program" means "a plan or system under which action may be taken towards a goal." Webster's New Collegiate Dictionary, 1977 (p. 919–20). As used in the letter agreement, "program" refers to the buy-back option on the property. The right to withdraw from the program was the right to withdraw from the buy-back option itself. Consequently, the district court was correct in concluding that appellant's admitted default on its sales obligation gave Peoples the unilateral right to withdraw from the agreement. We affirm the district court's dismissal of the contract claims which were based on the 1982 letter agreement.

■ Turning to appellant's next assignment of error, the district court was also correct in concluding that as a matter of law Peoples' exercise of its contractual right to withdraw could not form the basis of a deceptive trade practice claim under Chapter 75, N.C.Gen.Stat. *See United Roasters, Inc. v. Colgate–Palmolive Co.*, 649 F.2d 985, 992 (4th Cir.), *cert. denied*, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981) (absent aggravating circumstances, even an intentional breach of a contract does not violate N.C.Gen.Stat. § 75–1.1). Appellant's position that Peoples' actions in regard to the letter agreement were somehow deceptive is belied by the agreement itself. The agreement is simple and straightforward, and the result of extensive negotiation. A sophisticated real estate developer such as appellant could not possibly have been deceived by Peoples' insistence upon and use of the unilateral right of withdrawal. We affirm the district court's dismissal of this claim.

### III.

■ Appellant's final assignment of error, that the entry of summary judgment

against it on Count Four was inappropriate, has merit. The district court entered summary judgment against appellant's newly-added count *sua sponte*. While Fed. R.Civ.P. 56 does not expressly provide that district courts may enter summary judgments *sua sponte*, there can be little doubt that district courts inherently possess that power. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).[2] However, as other courts have recognized, that power is contingent on giving the losing party notice that it must come forward and defend its claim. *Id. Reese v. Sparks*, 760 F.2d 64 (3rd Cir.1985); *Yashon v. Gregory*, 737 F.2d 547 (6th Cir. 1984); *cert. denied*, —— U.S. ——, 108 S.Ct. 2015, 100 L.Ed.2d 602 (1988); *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47 (D.C.Cir. 1984); *Preterm, Inc. v. Dukakis*, 591 F.2d 121 (1st Cir.), *cert. denied*, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1057 (1979). While this notice need not necessarily be a formal document, *National Expositions, Inc. v. Crowley Maritime Corp.*, 824 F.2d 131, 133 (1st Cir.1987), it should provide the full ten days called for by Fed.R.Civ.P. 56(c). *Yashon*, 737 F.2d at 552; *Milburn v. United States*, 734 F.2d 762, 765–66 (11th Cir. 1984); *Powell*, 849 F.2d at 1579–80 n. 8.[3] The notice must be sufficient to provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact. *National Expositions*, 824 F.2d at 133–34. And it must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration. *See* Fed.R.Civ. P. 12(b); *Proimos v. Fair Automotive Repair, Inc.*, 808 F.2d 1273, 1278 (7th Cir. 1987).

The facts of this case demonstrate conclusively that appellant was not afforded sufficient notice. The district court entered summary judgment against the fourth count by the identical order in which it allowed the claim to be added to the

---

2. The Fifth Circuit has not yet reached this conclusion. *Powell v. United States*, 849 F.2d 1576, 1578–79, n. 6 (5th Cir.1988).

3. However, extraordinary circumstances may justify departures from the ten-day notice requirement. *See Portsmouth Square, Inc. v. Shareholders Protective Committee*, 770 F.2d 866 (9th Cir.1985).

complaint. No notice is clearly not sufficient notice.

■■■ Peoples contends that summary judgment on the new count was appropriate because the count did not contain any additional facts that would create a genuine issue of material fact. This argument misses the point. Appellants' right to notice and an opportunity to be heard on its claim has nothing to do with the merits of its case. Once the district court allowed the claim to be added to the complaint, it could be disposed of only in accordance with the Rules of Civil Procedure and the dictates of due process.[4] Thus, our ruling today intimates nothing about our view of the merits of appellant's claim. To the contrary, we find appellant's claim questionable at best. Nonetheless, regardless of a claim's merits, a district court may not *sua sponte* enter summary judgment against it until the claim's proponent has been given notice and a reasonable opportunity to be heard.

Because appellant was not notified and was not given this opportunity, we must reverse the portion of the district court's order entering summary judgment on Count Four of the amended complaint, and remand this case for further proceedings consistent with this opinion.

*AFFIRMED in part, REVERSED in part, and REMANDED.*

---

4. This opinion must not be read as a tacit endorsement of last-second amendments alleging meritless claims in an attempt to save a case from summary judgment. Trial courts should be wary of and unreceptive to such tactics. However, the proper way to handle such tactics is not to allow amendment and then enter summary judgment against the new claim without notice. Rather, a court should deny leave to amend on the grounds of futility. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Albrecht v. Lund,* 845 F.2d 193, 195 (9th Cir.) *amd.* 856 F.2d 111 (1988).