**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-1134**

JEFFERY J. MOORE; SANDRA J. MOORE,

      Plaintiffs - Appellants,

    v.

EQUITRANS, L.P., a Pennsylvania Limited Partnership,

      Defendant - Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  John Preston Bailey, District Judge.  (1:12−cv−00123−JPB)

Argued:  October 27, 2021            Decided:  February 23, 2022

Before GREGORY, Chief Judge, and WYNN and HARRIS, Circuit Judges.

Affirmed in part and vacated and remanded in part by published opinion.  Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

**ARGUED:**  Kenneth Eugene Webb, Jr., BOWLES RICE LLP, Charleston, West Virginia, for Appellants.  David K. Hendrickson, HENDRICKSON & LONG, PLLC, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Patrick C. Timony, William M. Lorensen, BOWLES RICE LLP, Charleston, West Virginia, for Appellants.  Barbara A. Samples, Stephen E. Hastings, HENDRICKSON & LONC, PLLC, Charleston, West Virginia, for Appellee.

WYNN, Circuit Judge:

In 2012, Plaintiffs-Appellants Jeffery and Sandra Moore brought an action claiming that Defendant-Appellee Equitrans, L.P., breached the parties' right-of-way agreement and trespassed on the Moores' land by laying two segments of pipeline outside of the metes and bounds specified in their agreement. Three years later, a jury found that Equitrans either trespassed on the Moores' West Virginia property or violated the parties' right-of-way agreement. But the jury made no findings as to the proper remedy. While the Moores initially sought equitable relief in the form of an ejectment, a subsequent condemnation judgment in favor of Equitrans ultimately precluded such relief.

Several appeals and a remand later, the district court allowed the Moores to pursue damages for their breach-of-contract and trespass claims but denied leave to add a claim for intentional trespass. Later, while considering various evidentiary motions, the district court switched gears and barred any claim for breach-of-contract damages. After excluding large swaths of the Moores' evidence of trespass damages, the court sua sponte entered judgment in favor of Equitrans.

In this appeal, we conclude that the district court did not abuse its discretion in denying leave to amend the complaint or in making its motion in limine rulings. Consequently, we affirm the district court on those issues. We also affirm judgment in favor of Equitrans on the issue of contract damages. And we reject the Moores' contention that the proper measure of trespass damages includes a portion of Equitrans's profits.

However, because the Moores lacked sufficient notice that they needed to come forward with all evidence of trespass damages, we vacate the portion of the district court's

2

order entering judgment on trespass damages for procedural error and remand for further proceedings on that issue alone.

I.

Because we surveyed the long and convoluted procedural history of this matter in our opinion in *Moore v. Equitrans, L.P.*, 818 F. App'x 212, 213–17 (4th Cir. 2020), we provide here only the facts relevant to this appeal.

In 1960, Equitrans's predecessor, the Equitable Gas Company, acquired a right-of-way from Jeffery Moore's parents for the construction of a 16-inch natural-gas pipeline crossing roughly 1,600 feet of their rural, hillside property in West Virginia. In 1990, Moore and his wife obtained the deed for the property, which they proceeded to use as a cow pasture. In the mid-1990s, Equitrans replaced some corroded pipeline, part of which was on the Moores' property. Rather than removing the old pipe and replacing it with new pipe in the same ditch, Equitrans laid new pipe beside the old to maintain operation of the pipe during construction.

In 2012, the Moores discovered that some of the newly laid pipeline diverged from the metes and bounds described in the right-of-way by roughly fifteen feet. The Moores filed suit in state court, claiming breach of the right-of-way agreement, ejectment, and trespass. They sought damages for the breach, an ejectment order to remove the pipeline, compensatory damages arising from any removal, and compensatory damages for trespass. Equitrans removed the case to federal court.

Leading up to and during a two-day trial in March 2015, the Moores repeatedly indicated that they were seeking the trespass remedy of ejectment instead of monetary

3

damages. In response, Equitrans explained that should the jury find trespass, Equitrans would pursue a condemnation action. At trial, the Moores failed to present any evidence of trespass damages. Nor did they propose jury instructions related to trespass damages or to willful or bad-faith trespass. Ultimately, the district court instructed the jury only on simple trespass, telling the jury that "[i]n West Virginia, trespass is defined as the entry on another person's property without lawful authority, and doing some damage, however inconsiderable, to that property." J.A. 652.[1]

The jury found that one section of the original pipeline and one segment of newly laid pipeline "violated the terms of the 1960 right-of-way agreement or constituted a trespass." J.A. 678. However, the jury made no findings regarding whether the Moores were entitled to ejectment or monetary relief. Accordingly, in a May 2015 order, the district court explained that the remedy was "yet to be determined." J.A. 702.

In a separate memorandum opinion and order, the district court granted Equitrans's motion to stay the judgment pending resolution of a condemnation action. *Moore v. Equitrans, L.P.*, No. 1:12CV123, 2015 WL 2129259, at *4–5 (N.D.W. Va. May 6, 2015). Shortly thereafter, Equitrans filed a condemnation complaint regarding 0.56 acres of the Moores' property. *See Equitrans, L.P. v. 0.56 Acres More or Less of Permanent Easement Located in Marion Cnty.*, 145 F. Supp. 3d 622, 625–26 (N.D.W. Va. 2015). After a condemnation trial in 2017, the jury awarded $5,000—which came out to $5,556.16 with

---

[1] Citations to "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

prejudgment interest—to the Moores as the fair market value of the condemned land. The Moores appealed.

Shortly after the condemnation trial, the Moores moved to amend the district court's May 2015 judgment regarding the proper remedy in this case. The district court denied the motion, choosing to maintain the stay until "the appeal in the condemnation action [was] resolved." *Moore v. Equitrans, L.P.*, No. 1:12CV123, 2017 WL 1455022, at *2 (N.D.W. Va. Apr. 21, 2017). We affirmed the condemnation judgment in March 2018. *Equitrans, L.P. v. Moore*, 725 F. App'x 221, 222 (4th Cir. 2018) (per curiam). Then, in December 2018, the district court lifted the stay and dismissed this case, reasoning that any attempt to amend the complaint would be "futile as plaintiffs have no available remedy for damages and no other rights remaining." J.A. 776. The Moores again appealed.

In 2020, this Court vacated and remanded the dismissal on the basis that the district court's precise reasoning was unclear. *Moore*, 818 F. App'x at 219. We expressed no opinion as to "the merits of any proposed amendment, or whether the court should permit it at this stage." *Id.*

Upon remand, the case was reassigned to a different district judge. The Moores sought leave to amend their complaint (1) to add claims of intentional trespass, inverse condemnation, and bad faith or oppressive conduct and (2) to seek monetary damages for breach of contract and trespass, as well as attorney's fees for condemnation. The district court found that the Moores pleaded damages for breach of contract and simple trespass in their initial complaint and should be allowed to proceed on those claims but denied leave to amend for all other claims, including intentional trespass.

5

In anticipation of a damages trial, the parties filed several *Daubert* motions and motions in limine. But in January 2021, the district court entered judgment sua sponte. *Moore v. Equitrans, L.P.*, No. 1:12-CV-123, 2021 WL 1654012, at \*2, 5–6 (N.D.W. Va. Jan. 4, 2021). Considering the pending evidentiary motions as well as a motion for reconsideration, the district court found that the Moores had waived all breach-of-contract damages and could not present any evidence of such at trial. *Id.* at \*1–2. The district court then granted several of Equitrans's various motions in limine, including one to exclude all testimony of the Moores' expert witness, David Howell. *Id.* at \*4–6[; J.A. 2317–21]. Concluding that the Moores had no remaining evidence of trespass or contract damages, the district court entered summary judgment for Equitrans. *Id.* at \*5–6. The Moores appeal to this Court once more.

## II.

On appeal, the Moores contend that the district court: (1) abused its discretion in refusing to allow them to amend the complaint to add a claim of intentional trespass; (2) applied the wrong measure of trespass damages and ignored relevant state precedent; (3) abused its discretion in excluding certain evidence; and (4) lacked the authority to enter judgment sua sponte and erred in concluding that the Moores waived any claims for breach-of-contract damages and had no proper evidence supporting trespass damages. We agree only on the matter of the sua sponte judgment as to trespass damages and vacate and remand solely on that basis. Otherwise, we affirm.

## A.

We turn first to the district court's denial of leave to amend the complaint to add an intentional-trespass claim. We review a district court's order denying leave to amend a complaint for abuse of discretion. *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006). Generally, leave should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Id.* at 426 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). However, the discretion of the district court to deny leave to amend "increases at later stages of litigation." *Moore*, 818 F. App'x at 217. This is because the "further [a] case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part." *Laber*, 438 F.3d at 427.

The district court construed the motion to amend as seeking to add an intentional-trespass claim. In denying leave to amend, the district court noted that "such a claim should have been included in the first trial, but was not" and that "there [was] no evidence that the trespass was intentional." J.A. 871. Although the district court did not categorize its denial as one stemming from bad faith, prejudice, or futility, a district court's "failure to articulate its reasons for denying leave to amend does not amount to an abuse of discretion so long as its reasons are apparent." *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 194 (4th Cir. 2009) (alterations and internal quotation marks omitted) (quoting *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005)). Here, the district court's reasoning clearly indicates that it relied on prejudice.

The Moores argue that the district court misconstrued their argument and assert that they initially "pled and proved" intentional trespass at trial, such that no amendment was necessary. Opening Br. at 12 n.14; *see id.* at 11–12, 43–47. Based on the record before us, we find no abuse of discretion.

To be sure, it is not apparent that the Moores initially pled intentional trespass as that term is defined under West Virginia law. But, even if they did, there is nothing in the record indicating they proved that claim at trial. Under West Virginia law, the difference between innocent and intentional or bad-faith trespass "turns on intent." *Reynolds v. Pardee & Curtin Lumber Co.*, 310 S.E.2d 870, 876 (W. Va. 1983). One who trespasses "intentionally or recklessly with intent to 'take an unconscientious advantage of his victim' commits a willful or bad faith trespass and is liable for damages in a greater amount than an innocent trespasser." *Id.* (quoting *Pan Coal Co. v. Garland Pocahontas Coal Co.*, 125 S.E. 226, 231 (W. Va. 1924)). The issue of whether a defendant is a "willful or innocent trespasser" is "intermingled with [the] liability determination" and "ordinarily" a question for the jury. *Bryan v. Big Two Mile Gas Co.*, 577 S.E.2d 258, 269 (W. Va. 2001).

Nothing in the record indicates that the jury considered the question of intent, let alone decided it in favor of the Moores. At trial, the Moores never clearly alleged that Equitrans mislaid the pipeline, either initially or during replacement, with the intent to "take an unconscientious advantage of" the Moores. *Reynolds*, 310 S.E.2d at 876.

Importantly, not only did the Moores fail to propose a jury instruction for willful or bad-faith trespass, they also voluntarily proffered an instruction for *simple trespass*. The court adopted that instruction nearly verbatim. As we have previously held, plaintiffs may

not propose a jury instruction and then complain when the court adopts that instruction. *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 170–71 (4th Cir. 2018). Thus, even assuming arguendo that the Moores raised an intentional-trespass claim in their complaint, they effectively withdrew that claim when they proposed an instruction related only to *simple* trespass, which the court then adopted.[2]

To the extent the Moores argue that they should have been permitted to *amend* their complaint to add a willful-trespass claim, we conclude that the district court did not abuse its discretion in denying the Moores leave to add such a claim at this very late stage of the litigation. Allowing the Moores to pursue such a claim and to reopen the liability stage of trial *years* after a jury verdict was rendered—which would require additional discovery and argument regarding the factual question of intent—would prejudice Equitrans by requiring it to litigate merits issues that could have been resolved in the first instance. *Cf. Laber*, 438 F.3d at 427 ("A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial.'" (quoting *Johnson*, 785

---

[2] The Moores argue that they did not need to propose instructions on intent because the trial "involved only liability related to the Moores' election of ejectment, [so] the intent issue was immaterial to [their] elected relief." Reply Br. at 17. But the Moores also insist that they never waived a claim for money damages. We need not determine whether the Moores did not propose a jury instruction related to intent because they were not pursuing a claim for intentional trespass; because they were not pursuing a claim for money damages; because they wanted to leave their options open by pursuing an easier-to-prove form of trespass; or for some other strategic reason. Whatever their reasoning, choices in litigation have consequences. If the Moores wanted to preserve a claim related to intentional trespass, they should have proposed an instruction pertinent to that claim when the matter was before the jury.

F.2d at 510)). Thus, the district court did not abuse its discretion when it declined to permit the Moores to amend their complaint.[3]

## B.

Next, the Moores contend that because under West Virginia law they are entitled to damages reflecting the value of the trespass *to Equitrans*, the district court erred in tying their relief to "the condition, use, and value of the property based upon the condition it was in and purpose for which it was used before the trespass occurred." *Moore*, 2021 WL 1654012, at *3. We disagree.

When sitting in diversity, a federal court must "apply the law of the forum state as it is interpreted by the state's highest court." *Adamson v. Columbia Gas Transmission, LLC*, 579 F. App'x 175, 177 (4th Cir. 2014) (per curiam); *see Priv. Mortg. Inv. Servs. v. Hotel & Club Assocs.*, 296 F.3d 308, 312 (4th Cir. 2002). If the state supreme court "has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." *Priv. Mortg. Inv. Servs.*, 296 F.3d at 312. In this process, we look to the "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Adamson*, 579 F. App'x

---

[3] Because we affirm on the grounds espoused in the district court's September 2020 denial of leave to amend, we find it unnecessary to discuss the district court's analysis of the bounds of the right-of-way in its reconsideration of intentional-trespass damages. *Moore*, 2021 WL 1654012, at *3; *see Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003) (explaining that this Court is "entitled to affirm on any ground appearing in the record").

at 177 (quoting *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999)). However, while sitting in diversity, we "should not create or expand [a] State's public policy." *Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.*, 506 F.3d 304, 314 (4th Cir. 2007) (quoting *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995)).

Under established West Virginia law, "when residential real property is damaged, the owner may recover the reasonable cost of repairing it" as well as damages for the diminution in value of the property, "to whatever extent such damages are not duplicative of one another." *Brooks v. City of Huntington*, 768 S.E.2d 97, 105–06 (W. Va. 2014). "The owner may also recover the related expenses stemming from the injury, annoyance, inconvenience, and aggravation, and loss of use during the repair period." *Id.* at 105. "If the damage cannot be repaired, then the owner may recover the fair market value of the property before it was damaged, plus the related expenses stemming from the injury . . . [including] loss of use during the time he has been deprived of his property." *Id.*

Damages to non-residential property are similar, except that the plaintiff may only recover the cost of repair *or* (if repair is impossible) the diminution in value and cannot seek damages for annoyance, inconvenience, or aggravation. *See* W. Va. Pattern Civil Jury Instructions §§ 804–05 (2017) (laying out recoverable damages for damage to non-residential and residential properties, respectively); *Kincaid v. Morgan*, 425 S.E.2d 128, 134 (W. Va. 1992) (noting, in a case involving a permanent trespass on nonresidential property, that "actual damages should be calculated by taking the value of the property before the trespass and subtracting the value of the property after the trespass"). In both

11

residential and nonresidential cases, a plaintiff may seek damages for loss of use, which in the case of nonresidential property may include lost profits or lost rental value. W. Va. Pattern Civil Jury Instructions §§ 804–05; *see also Bethlehem Steel Corp. v. Shonk Land Co.*, 288 S.E.2d 139, 149 (W. Va. 1982); *Malamphy v. Potomac Edison Co.*, 83 S.E.2d 755, 761 (W. Va. 1954).

Thus, a plaintiff's recovery in a West Virginia trespass action is limited to the cost of repair, the diminution in value, or (for residential properties and to the extent not duplicative) both; damages for loss of use, such as reasonable rental damages; and (for residential properties) damages for annoyance, inconvenience, and aggravation.[4] Absent from these principles is any notion that the plaintiff may profit from the *defendant's* use of the land. Rather, "[t]he aim of compensatory damages is to restore a plaintiff to the financial position he/she *would presently enjoy* but for the defendant's injurious conduct." *Brooks*, 768 S.E.2d at 105 (emphasis added) (quoting *Kessel v. Leavitt*, 511 S.E.2d 720, 812 (W. Va. 1998)).

However, the Moores assert that the damages available under West Virginia law are not so limited, and that they are entitled to the value of the trespass *to Equitrans*—including a portion of its profits. The Moores cite no state appellate cases to support that they may seek such a windfall. Instead, they rely heavily on a trial court's ruling on a motion in limine in *Crowder v. EQT Production Co.*, in which that court allowed evidence of the

---

[4] As explained in more depth below, what factors may be considered in determining the reasonable rental value varies with the nature of the trespass and the type of property. *See Bethlehem Steel Corp.*, 288 S.E.2d at 149.

willful trespasser's profits to be considered as part of the rental value of the land, given the specific circumstances of that case. No. 14-C-64, 2017 WL 5070017 (W. Va. Cir. Ct. July 6, 2017). To the extent that we can even consider a trial court's ruling on a motion in limine for any measure of guidance on West Virginia law, we discern no indication that *Crowder* purported to establish a broader measure of trespass damages in all cases.[5]

That's because in *Crowder*, the trial court refused to exclude evidence of EQT's revenues stemming from its trespass and allowed an expert to "opine[] that . . . the reasonable rental value of land for the transportation of hydrocarbon minerals, both coal and gas, [was] directly tied to the value of EQT's production." *Id.* at *1. However, the court largely relied on out-of-state cases to reach this conclusion. *See id.* at *1–4 & nn.2, 4. Additionally, the court explained that the measure of damages depended on "the facts in each trespass," and stressed that *Crowder* arose out of the "relatively new" development of certain drilling techniques—for which there was little established law—and involved a

---

[5] In fact, federal district courts applying West Virginia trespass law have on several occasions refused to award damages comparable to those the Moores seek here, including after *Crowder*. *See Hatfield v. Columbia Gas Transmission, LLC*, No. CV 3:19-00584, 2020 WL 3979669, at *5 (S.D.W. Va. July 14, 2020) (rejecting a measure of damages based on the "the value bestowed upon [the d]efendant through the unlawful use of [the p]laintiffs' [p]roperty"); *Scott Hutchison Enters. v. Cranberry Pipeline Corp.*, No. CV 3:15-13415, 2016 WL 6585284, at *2 (S.D.W. Va. Nov. 4, 2016) (rejecting an unjust-enrichment claim for "the profit gained from the continued use of the [trespassing] pipeline" and finding that the "damages award, if any, should be limited to the rental value of the land or amount required to obtain a proper easement, not the Defendants' profits"); *Young v. Appalachian Power Co.*, No. CIV.A.2:07-479, 2008 WL 4571819, at *9 (S.D.W. Va. Oct. 10, 2008) (explaining that, where nothing was taken from the land in the course of the trespass, "[t]o afford plaintiffs royalties for the value of the power transmitted through the defendant's [power] lines would be to grant them an undeserved windfall, as defendant's wrong did not deprive plaintiffs of that value in the first place").

13

clear, willful trespass on the part of EQT. *Id.* at \*2. It is not clear what method the *Crowder* jury used to reach the ultimate damages award.[6] And, although the Supreme Court of Appeals of West Virginia ultimately affirmed the jury award, it did not delve into or rule on the proper calculation of damages. *See EQT Prod. Co. v. Crowder*, 828 S.E.2d 800, 803 (W. Va. 2019).

More importantly, the rights-of-way and leases involved in *Crowder* involved mineral leases of a type that usually included, and in fact in that case did include, royalties. *See id.* at 803–05. The Supreme Court of Appeals of West Virginia has previously noted that, "[f]or mineral leases[,] reasonable rental value is synonymous with reasonable royalties." *Bethlehem Steel Corp.*, 288 S.E.2d at 149. But here, there is no indication that Equitrans's right-of-way agreements include royalties or that pipelines with the right to condemn typically include royalties in their right-of-way agreements. Nor does the right-of-way agreement at issue here parallel a traditional mineral lease, as nothing is being extracted from the Moores' land.

Thus, sitting in diversity, we cannot use *Crowder* to predict whether the Supreme Court of Appeals of West Virginia would permit evidence of a trespasser's profits in any other case, let alone a case with vastly divergent facts and no jury finding of bad faith. It is

---

[6] However, the jury instructions defined "fair market value" or "fair rental value" to mean "the price for which the land could be sold or rented in the market by a prudent seller or owner who is informed and knowledgeable and who wants to sell or rent and is under no compulsion of any kind to sell or rent, to a prudent buyer or renter who is informed and knowledgeable, and who wants to buy or rent and is under no compulsion of any kind to buy or rent." *Crowder v. EQT Prod. Co.*, No. 14-C-64, 2017 WL 5053805, at 5–6 (W. Va. Cir. Ct. Sept. 7, 2017).

not the role of this Court to dramatically expand West Virginia's public policy on what damages are warranted in a simple trespass case without clear direction from its appellate courts, especially where the state Supreme Court has previously warned against permitting plaintiffs to receive disproportional windfalls. *See Brooks*, 768 S.E.2d at 105 ("Recognizing that damages grossly in excess of a property's pre-damage market value smacks uncomfortably of economic waste, to accommodate our policy concerns of full compensation, any [cost-of-repair] award must be subject to reasonable limitations." (internal quotation marks omitted)). Consequently, we hold that the district court applied the appropriate measure of trespass damages under controlling West Virginia law.[7]

### C.

Having determined the proper measure of damages, we next address the Moores' argument that the district court abused its discretion in excluding certain evidence. We review a district court's refusal to admit evidence for abuse of discretion. *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012). "A district court abuses its discretion when it acts in an arbitrary manner, . . . fails to consider judicially-recognized factors limiting its discretion, or . . . relies on erroneous factual or legal premises." *Id.*

---

[7] To the extent the Moores allege that the district court erred by constraining its interpretation to the *surface* of the right-of-way, we find no support for such a statement in the record. The district court's order states only that "the appropriate standard is the rental value of approximately one-half acre of hillside in rural Marion County, West Virginia." *Moore*, 2021 WL 1654012, at *4. The order said nothing to indicate it limited its consideration of the value of the trespassed property solely to the surface of that hillside. *See id.*

15

The Moores challenge the district court's exclusion of (1) evidence of intentional trespass and corresponding damages, (2) evidence of numerous right-of-way agreements and contracts involving Equitrans and/or third parties, and (3) the expert testimony of Mr. Howell. None of these challenges have merit.

First, because the district court denied the Moores' motion to amend their complaint to pursue a claim of intentional trespass, any evidence thereof was appropriately excluded as irrelevant, unduly prejudicial, or likely to confuse the issue. Fed. R. Evid. 401, 403.

Second, the district court did not abuse its discretion in excluding evidence of certain third-party leases and rights-of-way. *Moore*, 2021 WL 1654012, at *5. These third-party transactions—including, for example, permits and agreements for pipelines to cross channels in California and Texas and land owned by the Bureau of Indian Affairs in North Dakota, as well as fees charged to vehicles or vessels crossing highways, bridges, ferries, and the Panama Canal—are not comparable to the Moores' property. In similar contexts, West Virginia courts have found such evidence irrelevant for determining the value of the land. *See W. Va. Dep't of Transp., Div. of Highways v. W. Pocahontas Props.*, 777 S.E.2d 619, 637–38 (W. Va. 2015) (discussing condemnation proceedings, explaining that "[a]rm's length transactions in lands *in the vicinity of and comparable to* the land under appraisement, reasonably near the time of acquisition, are the best evidence of market value," and noting that sales of property in Australia and Indonesia were likely not "in the vicinity of or in any way comparable to the . . . property at issue" (emphasis added) (internal quotation marks omitted)); *W. Va. Dep't of Highways v. Brumfield*, 295 S.E.2d 917, 920 (W. Va. 1982) (stating that evidence of the price paid for a comparable property

is admissible if the sale is "bona fide," voluntary, "occurred relevantly in point of time," and covered "property which is comparable to the property" at issue). Under the Federal Rules of Evidence, such irrelevant evidence was properly excluded. Fed. R. Evid. 401, 403.

Lastly, the district court did not abuse its discretion when it excluded all testimony of the Moores' expert, Mr. Howell. An expert witness must be qualified by "knowledge, skill, experience, training, or education" and may offer an expert opinion if (a) the testimony will assist the jury; "(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also United States v. Crisp*, 324 F.3d 261, 265 (4th Cir. 2003) (explaining this rule and citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).

As the district court noted, Mr. Howell's opinions were neither likely to assist the jury nor based on any reliable principles or methodology. *Moore*, 2021 WL 1654012, at *5. To start, Mr. Howell's report recommends a measure of damages based upon the profits of Equitrans, which is contrary to controlling law for the reasons explained above. Thus, his opinions and testimony on trespass damages were irrelevant and unlikely to assist the jury. Fed. R. Evid. 401, 702.

Additionally, Mr. Howell's report is replete with unexplained assumptions, inaccurate calculations, and unsupported base estimates. For example, during his deposition testimony, Mr. Howell admitted he did not author significant portions of his report, did not perform the calculations contained therein, and was unable to answer basic questions regarding how he came to his conclusions. *E.g., Dura Auto. Sys. of Ind. v. CTS*

17

*Corp.*, 285 F.3d 609, 612–13 (7th Cir. 2002) (explaining that while an "expert witness is permitted to use assistants in formulating his expert opinion," issues may arise where those "assistants aren't merely gofers or data gatherers but exercise professional judgment that is beyond the expert's ken"); *TK-7 Corp. v. Est. of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (finding an expert's "lack of familiarity with the methods and the reasons underlying [another expert's] projections" problematic since it "virtually precluded any assessment of the validity of the projections through cross-examination of [the testifying expert]"). Given the myriad problems reflected in Mr. Howell's opinions and reports, the district court was well within its discretion to exclude his testimony.

### D.

Lastly, the Moores assert that without any summary judgment motions before it and without giving proper notice to the parties, the district court impermissibly found sua sponte that the Moores (1) waived any breach-of-contract damages and (2) failed to demonstrate proper trespass damages, thereby entitling them to only nominal damages. For the reasons discussed below, we find no reversible error regarding the exclusion of all evidence of contract damages but hold that the district court procedurally erred in granting summary judgment on the issue of trespass damages without affording the Moores proper notice and a chance to be heard.

### 1.

Under Rule 56, "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant [a summary judgment] motion on grounds not raised by a party; or (3) consider summary judgment on its own

18

after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). Thus, "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *see also U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989). While this notice "need not necessarily be a formal document," it "must be sufficient to provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact." *U.S. Dev. Corp.*, 873 F.2d at 735. Furthermore, "it must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration." *Id.* These requirements ensure a litigant has a "full and fair opportunity to present its case." *aaiPharma Inc. v. Thompson*, 296 F.3d 227, 235 (4th Cir. 2002). And a district court may not short-circuit the notice and hearing process on the basis that the claim at issue lacks merit. *U.S. Dev. Corp.*, 873 F.2d at 736.

2.

With these principles in mind, we turn first to the question of whether the district court erred in granting summary judgment on the contract damages claim after barring all evidence of such damages. We conclude that the court did err, but that remand on this basis is unwarranted.

At the time the district court entered its judgment, no summary judgment motions were pending. Instead, the court had before it only a motion for reconsideration and various evidentiary motions—including the parties' opposing motions in limine. *See Moore*, 2021

WL 1654012, at *1 (listing pending motions). Equitrans's relevant motion in limine sought to prevent the Moores from offering any evidence of alleged damages for breach of contract on the grounds that they had failed to submit evidence of such damages prior to trial. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring disclosure of "a computation of each category of damages claimed by the disclosing party," as well as the related evidence). In response, the Moores asserted that they had (1) identified Mr. Howell as an expert to testify on system downtime damages, (2) proposed a jury instruction on opportunistic breach, and (3) identified annoyance and inconvenience damages.

The district court, however, did not rule on the basis raised by Equitrans in its motion in limine. Instead, it sua sponte excluded any evidence of contract damages on waiver grounds not espoused by either party at that time and twice rejected by the court just months before.[8] *Compare* J.A. 870 (September 2020 order determining that initially pled claims for breach of contract and trespass damages were still viable, and not waived), *and* J.A. 889–90 (October 2020 order denying Equitrans's motion to alter or amend the previous order), *with Moore*, 2021 WL 1654012, at *1–2 (January 2021 order concluding

---

[8] Certainly, district courts "retain[] [some] discretion to revise [interlocutory] order[s] 'at any time before the entry of a judgment adjudicating all the claims.'" *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). However, here, the court's unexpected change of heart contributed to the lack of notice to the parties that the court was contemplating entering judgment based on this theory.

that the Moores "clearly waived" damages for breach of contract). As neither party had notice or an opportunity to respond to this alternative theory, the district court's ruling on waiver grounds was error.[9] However, based on the specific facts of this case, we do not believe this procedural error warrants reversal.

That's because we may affirm, and do so here, on the grounds contained within the subject motion, namely that the Moores failed to adequately disclose any admissible contract damages before trial. *Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003) ("We are, of course, entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court."). Unlike with the waiver theory relied on by the district court, the Moores had adequate notice and opportunity to respond to this failure-to-disclose theory of exclusion. *Cf. Forrest v. Parry*, 930 F.3d 93, 111 (3d Cir. 2019) (stating that a motion in limine may "result[] in a *sua sponte* grant of summary judgment . . . by way of the court having eliminated the evidentiary basis for a claim").

Illustrative here is our ruling in *Liobmedia, LLC v. Dataflow/Alaska, Inc.*, 349 F. App'x 843 (4th Cir. 2009) (unpublished but orally argued). In *Liobmedia*, this Court

---

[9] *See U.S. Dev. Corp.*, 873 F.2d at 735; 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720.1 (4th ed. 2016 & Supp. 2021) ("[I]f the court determines to enter summary judgment on a ground not presented or argued by the parties, the failure to give the losing party an opportunity to defend against that ground provides a ground for reversal."); *cf. Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 154 (3d Cir. 1985) (refusing to uphold a district court's grant of a motion in limine, explaining that by granting the motion based on grounds other than those in the motion, "the district court effectively precluded [the] plaintiffs from marshalling the record evidence that it had already accumulated on th[e] issue" and thus ran afoul of applicable procedural protections).

affirmed the district court's sua sponte grant of summary judgment to the defendant on a breach-of-contract claim. *Id.* at 844. The district court entered judgment based on the defendant's motion in limine to limit contract damages and the plaintiff's opposition. *Id.* at 844–45. Because "damages is an essential element of a breach of contract claim," we reasoned that "once [the plaintiff] was served with [the defendant's] motion to limit damages, [the plaintiff] knew or should have known that the motion sought to bar [the plaintiff's] recovery of all damages as the motion sought to limit recovery to 'an amount not to exceed one dollar.'" *Id.* at 844. Thus, we held that the contents of the defendant's motion in limine and the opportunity for the plaintiff to file an opposition satisfied the notice-and-opportunity requirements. *Id.* at 844–45.

So too here. Equitrans's motion in limine sought to preclude all evidence of breach-of-contract damages on the grounds that the Moores failed to disclose any such damages in their discovery responses. Therefore, the Moores knew or should have known that the motion intended to prevent any claim for damages resulting from a breach of the right-of-way agreement and that they needed to marshal all their evidence related to contract damages. *See id.* at 844. The Moores were also afforded a reasonable opportunity to be heard on the issue, and indeed, took that opportunity by filing an opposition brief putting forth their claimed damages.[10]

---

[10] Prior versions of Federal Rule of Civil Procedure 56 required at least ten days' notice. *See, e.g.*, *Celotex Corp.*, 477 U.S. at 322 n.4; *U.S. Dev. Corp.*, 873 F.2d at 735. However, Rule 56 has since been amended to remove the specific 10-day language, and now requires only that the parties have a "reasonable time to respond." Fed. R. Civ. P. 56(f). The local rules of the Northern District of West Virginia provide twenty-one days

But despite having notice and opportunity to present their case, the Moores failed to point to admissible evidence of contract damages identified in discovery. In briefing before this Court, the Moores do not assert any inconvenience or annoyance damages stemming from the breach of the right-of-way agreement. While the Moores point to the testimony of Mr. Howell to show damages, his opinions were properly excluded by the district court and thus cannot be relied upon to prove contract damages. *Moore*, 2021 WL 1654012, at *5; *see* Reply Br. at 13–14 (relying on Mr. Howell's testimony concerning system downtime damages to support a theory of opportunistic breach). Lastly, at oral argument, the Moores' counsel admitted that there was no evidence of harm or compensatory damages resulting from breach of the right-of-way. Oral Arg. at 8:20–52, https://www.ca4.uscourts.gov/OAarchive/mp3/21-1134-20211027.mp3. As the Moores failed to identify any other contract damages in discovery and expressly disavowed compensatory damages, any attempt to introduce new and yet undisclosed contract damages evidence at trial would undoubtably harm Equitrans. *See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).[11]

---

for a response to a summary judgment motion and up to fourteen days for other motions; however, here the Moores only had seven days to respond. *See* N.D.W. Va. L.R. Civ. P. 7.02(b)(1); J.A. 880. Given that the Moores actually responded to the motion, we conclude that seven days was sufficient to provide them a reasonable opportunity to be heard.

[11] Typically, to determine whether non-disclosed evidence should be excluded, this Court considers five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack & Fixture*, 318 F.3d at 597.

Given the late stage of the case and the Moores' failure to identify any admissible contract damages despite having notice and an opportunity to do so, we affirm the exclusion of all evidence of contract damages and affirm summary judgment on that issue.

3.

By contrast, we hold that the district court procedurally erred by granting summary judgment on trespass damages without providing the Moores proper notice or an opportunity to be heard. While Equitrans's motions sought to exclude large swaths of the Moores' evidence of trespass damages, Equitrans did not clearly seek to exclude *all* evidence of trespass damages nor to limit recovery of trespass damages to only a nominal amount. *See Liobmedia*, 349 F. App'x at 844–45; *cf. Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 661 (4th Cir. 2017) (finding sua sponte judgment proper even though the prevailing party did not directly challenge or present any argument or authority on a disputed claim in his motion for summary judgment because he moved for summary judgment on "all claims against him," thus putting the opposing party on notice).

Consequently, the Moores lacked any notice that they needed "to come forward with *all . . .* evidence" of their purported trespass damages or face an adverse judgment. *Celotex Corp.*, 477 U.S. at 326 (emphasis added). Indeed, the Moores contend that they possess additional evidence relevant to trespass damages that was not directly challenged in Equitrans's motions, including the testimony of Equitrans's own experts. Given the limited nature of Equitrans's motions, and the corresponding lack of notice, the district court procedurally erred by sua sponte finding there to be no "proper evidence on the rental value of the [Moores'] property" and limiting them to an award of "nominal damages only."

24

*Moore*, 2021 WL 1654012, at *5. We therefore vacate the portion of the district court's order entering judgment on the issue of trespass damages and remand for further proceedings on that narrow question.

We emphasize, however, that we express no opinion at this time as to the merits of a motion for summary judgment filed by Equitrans on remand, or on a properly noticed sua sponte judgment on the part of the district court. Our remand is based solely on the lack of notice to the Moores to enable them the opportunity to defend against summary judgment on the issue of trespass damages.

III.

For the reasons explained above, we affirm the district court's denial of leave to amend the complaint to add a claim for intentional trespass, the measure of trespass damages applied by the district court, the challenged motion-in-limine rulings, and the exclusion of all evidence of contract damages and corresponding grant of summary judgment on the contract-damages claim. However, we vacate and remand for further proceedings regarding the district court's sua sponte grant of summary judgment on trespass damages based on the lack of notice and opportunity to be heard.

*AFFIRMED IN PART;*
*VACATED AND REMANDED IN PART*