**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1365**

---

ANTHONY VINES,

        Plaintiff - Appellant,

    v.

MOUNTAIRE FARMS, INC.,

        Defendant - Appellee.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:21−cv−00059−BO)

---

Argued:  January 26, 2024                       Decided:  March 25, 2024

---

Before AGEE and RUSHING, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Affirmed in part, vacated in part, and remanded with instructions by unpublished per curiam opinion.

---

**ARGUED:**  Clermont Fraser Ripley, NORTH CAROLINA JUSTICE CENTER, Raleigh, North Carolina, for Appellant.  Elizabeth K. Dorminey, WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, P.C., Atlanta, Georgia, for Appellee.  **ON BRIEF:** Carol L. Brooke, NORTH CAROLINA JUSTICE CENTER, Raleigh, North Carolina, for Appellant.  J. Larry Stine, WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, P.C., Atlanta, Georgia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this appeal, we consider whether the district court erred in awarding an employer summary judgment in a lawsuit by its former employee alleging retaliation under the North Carolina Retaliatory Employment Discrimination Act (REDA), N.C. Gen. Stat. §§ 95-240 to -245. We consider four allegedly adverse actions taken by the employer: a disciplinary warning, a relocation to another position, a two-day suspension from work, and termination from employment. After reviewing the record, we affirm the district court's judgment in part, vacate in part, and remand with instructions.

We hold that the disciplinary warning and the relocation of the former employee to another position do not qualify as adverse actions under REDA. We further hold that the employer satisfied its burden to show that it had legitimate reasons supporting its decision to terminate the former employee. Finally, with regard to the two-day suspension, the lone remaining basis for the former employee's REDA claim, we agree with the district court's alternative holding declining to exercise discretionary supplemental jurisdiction over this claim, because the claim does not satisfy the threshold amount of money damages required for diversity jurisdiction under 28 U.S.C. § 1332(a).

I.

We state the facts in the light most favorable to Anthony Vines, the former employee and the party against whom summary judgment was awarded. *See Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022). In August 2018, Vines began working for Mountaire Farms, Inc. (Mountaire) in the "tenders" department at Mountaire's chicken processing

3

facility in Lumber Bridge, North Carolina.  After starting work, Vines informed his supervisor, Tiffany Campbell, that he had suffered from peripheral neuropathy for the past several years, which affected his balance and his ability to walk quickly.

Vines was assigned to work with "dry ice," a task that did not involve a lot of walking but required him to "scoop" dry ice into boxes as part of the chicken-packing process.  Due to his exposure to the dry ice fumes, Vines experienced various symptoms, including a runny nose, dry mouth, headaches, and a loss of appetite.  When Vines repeatedly informed Campbell about these symptoms, she responded that no other employees were "complaining."  After Vines purchased a mask to cover his nose and mouth, Campbell did not permit him to wear the mask.

On January 10, 2019, Vines left work early and did not return until January 17, 2019, accumulating several unexcused absences.  Upon his return, Vines produced a note from a doctor stating that Vines was medically cleared to work without restrictions.

On January 30, 2019, when Vines again did not report to work, he accrued an additional unexcused absence.  Although Mountaire's policy provided that Vines should have received a warning based on the number of his accumulated absences, he did not receive such a warning.

On February 15, 2019, Vines left work early.  That same day, he contacted the North Carolina Department of Labor's Occupational Safety and Health Division (NCOSH) and complained that he was not provided the respiratory protection necessary to work with dry ice (the February 15 complaint).  Two days later, Vines sought medical treatment at a hospital due to his suffering from dehydration, sciatic nerve pain, and neuropathy in his

4

feet. Vines took medical leave from work for one week and returned to work on Monday, February 25, 2019.

On or around February 25, 2019, Vines complained to Campbell about carbon dioxide exposure from working with the dry ice (the February 25 complaint). In response, Campbell instructed Vines to meet with Gilda Richardson, an employee relations manager.

Vines explained to Richardson that he had been denied respiratory protection. At that time, Richardson gave Vines a disciplinary warning showing that between August 25, 2018 and February 22, 2019, Vines had been charged with 13 unexcused absences. However, Richardson also informed Vines that she would reduce the documented absences to seven provided that he continued working and "didn't complain" about safety issues.

On Tuesday, March 5, 2019, in response to Vines's complaint about his working conditions, NCOSH inspectors attempted to inspect Mountaire's facility but the investigation was "cut short" due to equipment malfunctions.[1] The next day, March 6, 2019, Richardson took from Vines the card that allowed him access to the building and told him that she would "see [him] Monday." At that time, Vines was escorted out of the facility. Vines viewed this action as a two-day suspension.

The following Monday, March 11, 2019, Vines returned to work and was transferred to a new position in the "leg quarters" department, where he was required to lift "heavy" boxes and carry them to a table. While performing these tasks, Vines suffered a back injury

---

[1] NCOSH inspectors later returned to the facility and observed that the carbon dioxide readings exceeded acceptable levels.

5

from "twist[ing]" and "lifting" and sought medical treatment the following day. The examining physician diagnosed Vines with a lumbar sprain.

From March 12, 2019 through April 12, 2019, Vines took medical and personal leave from work due to this back injury and the need for family leave to care for his sister, who was terminally ill. On Monday April 15, 2019, Vines met with Maria Vos, a benefits supervisor. When Vines told Vos he could not return to work because he still had pain, Vos responded that Vines needed a note from a doctor before he could be placed on additional medical leave. As of that date, Vines had used "all the leave available to him, 240 hours."

Vines later received a medical note excusing him from work from April 15, 2019 through April 17, 2019. That note also stated that he could return to work on April 18, 2019, with "[l]ight [d]uty restrictions." In response to the note, Richardson told Vines that Mountaire did not have "light[ ]duty" positions for employees like Vines who had not filed a workers' compensation claim. On April 17, 2019, Mountaire terminated Vines's employment.

In June 2019, Vines filed a complaint with the North Carolina Department of Labor (DOL) alleging that Mountaire had retaliated against him. The DOL later issued Vines a "right to sue" letter and, in December 2020, Vines filed suit against Mountaire in North Carolina state court alleging retaliation in violation of REDA, N.C. Gen. Stat. §§ 95-240

6

to -245.[2]  Mountaire removed the action to federal district court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and later filed a motion for summary judgment.  The district court ultimately granted Mountaire's summary judgment motion.

The district court first determined that Vines had established a prima facie case of retaliation in violation of REDA.  In reaching this conclusion, the court identified two protected activities: (1) the February 15 complaint with NCOSH, and (2) the February 25 complaint to Campbell about dry ice exposure.  The court also identified four adverse actions: (1) the February 25 disciplinary warning regarding Vines's absences (the warning); (2) the March 7-8 two-day suspension (the two-day suspension); (3) the March 11 relocation to the leg quarters department (the relocation); and (4) the April 17 termination (the termination).  Generally relying on the temporal proximity between these adverse actions and Vines's protected activities, the court concluded that there was a causal connection between each adverse action and at least one protected activity.

The district court nevertheless held that Mountaire had "legitimate reasons" to take the adverse actions, including that Vines had exhausted the 240 hours of personal leave available to first-year employees and that Mountaire was not required to accommodate

---

[2] Vines also alleged a claim of wrongful discharge in violation of North Carolina public policy, which necessarily relied on his allegation of unlawful retaliatory termination under REDA.  *See Fatta v. M & M Props. Mgmt., Inc.*, 727 S.E.2d 595, 598 (N.C. Ct. App. 2012).  As explained below, the district court awarded summary judgment to Mountaire on Vines's REDA claim and, thus, also entered judgment in Mountaire's favor on Vines's public policy claim.  Because we affirm the district court's judgment in favor of Mountaire on Vines's claim of unlawful retaliatory termination under REDA, we also summarily affirm the court's judgment on Vines's public policy claim.

Vines's need for a "light duty" position. Finally, the court held that the reasons given by Mountaire for taking these actions were not a pretext for discrimination.[3] The court thus granted Mountaire's motion for summary judgment on Vines's REDA claim. The court alternatively held that, even if the two-day suspension was a viable REDA claim, the court would dismiss that claim with instructions to refile the claim in state court because the claim fell "well below the $75,000 threshold [for money damages] for diversity jurisdiction."

Accordingly, the district court entered final judgment in favor of Mountaire. Vines timely appealed.

## II.

### A.

We review de novo a district court's award of summary judgment. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citation omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (citation omitted).

---

[3] *See infra* note 5 (setting forth Vines's argument on appeal regarding pretext).

As indicated above, in conducting this review, we consider the facts "in the light most favorable" to Vines as the non-moving party. *Knibbs*, 30 F.4th at 213 (citation omitted). Accordingly, we must draw "all reasonable inferences" from those facts in Vines's favor, *Henry*, 652 F.3d at 531, and "may not credit [the] defendant's evidence, weigh the evidence, or resolve factual disputes in the defendant['s] favor," *Hensley ex rel. N.C. v. Price*, 876 F.3d 573, 579 (4th Cir. 2017).

In deciding this appeal, which arose under the district court's diversity jurisdiction, 28 U.S.C. § 1332, we apply North Carolina substantive law.[4] *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)). Under North Carolina statutory law, REDA provides that "[n]o person shall discriminate or take any retaliatory action against an employee" when the employee engages in protected activity. N.C. Gen. Stat. § 95-241(a).

To state a prima facie claim under REDA, a plaintiff must show that he (1) engaged in protected activity and (2) suffered an adverse employment action that (3) was causally connected to the protected activity. *See Fatta v. M & M Props. Mgmt., Inc.*, 727 S.E.2d 595, 598-99 (N.C. Ct. App. 2012). After a plaintiff establishes a prima facie case of retaliation, a defendant seeking summary judgment must show "by the greater weight of

---

[4] When exercising diversity jurisdiction, "a federal court must apply the law of the forum state as it is interpreted by the state's highest court." *Moore v. Equitrans, L.P.*, 27 F.4th 211, 220 (4th Cir. 2022) (citation and quotation marks omitted). "If the state supreme court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." *Id.* (citation and quotation marks omitted). In this process, we look to the "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Id.*

9

the evidence that it would have taken the same unfavorable action in the absence of the protected activity of the employee."[5]  N.C. Gen. Stat. § 95-241(b); *McDowell v. Cent. Station Original Interiors, Inc.*, 712 S.E.2d 251, 254 (N.C. Ct. App. 2011).

For purposes of this decision, we assume without deciding that Vines's February 15 complaint with NCOSH and his February 25 complaint to Campbell about the dry ice exposure qualify as protected activity under REDA.  *See* N.C. Gen. Stat. § 95-241(a)(1)(b). Like the district court, we analyze the four allegedly adverse employment actions, including the warning, the relocation, the two-day suspension, and the termination.  We turn first to address the warning and the relocation.

B.

"Retaliatory action[s]," or adverse employment actions, as defined by REDA include "discharge, suspension, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment."  N.C. Gen. Stat. § 95-240(2).  Applying this statutory definition, we initially conclude that neither the warning nor the relocation qualifies as an adverse employment action under REDA for purposes of establishing a prima facie claim.

---

[5] On appeal, Vines contends that the district court erred in applying a burden-shifting scheme under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which permits the plaintiff to show as a final step that the employer's purportedly valid reason for termination was pretext for retaliation.  411 U.S. at 807.  We acknowledge that the Supreme Court of North Carolina has not addressed whether this framework is applicable to REDA claims.  However, we need not decide whether that framework is applicable here because we conclude that, regardless of the particular standard imposed, Vines has failed to satisfy his ultimate burden of persuasion that Mountaire retaliated against him.

10

*See Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 251 n.3 (4th Cir. 2018) (explaining that we may affirm a district court's judgment on an alternative basis if apparent from the record).  Although the warning denoting Vines's excessive unexcused absences may have suggested future action against Vines,[6] the warning did not change the "terms, conditions, privileges," or "benefits" of Vines's employment at that time.  *See* N.C. Gen. Stat. § 95-240(2).  Additionally, there is insufficient evidence in the record regarding Vines's relocation to a position in the "leg quarters" department to conclude that it qualified as an adverse action under REDA.  We therefore turn to consider Vines's REDA claim based on his termination from employment.

## C.

We assume without deciding that Vines established a prima facie case of retaliation under REDA based on his termination from employment.  As explained below, however, we nevertheless conclude that the district court correctly held that that Mountaire had two legitimate, nonretaliatory reasons for his termination: (1) Vines had exhausted his leave and (2) Mountaire did not offer "light duty" positions to employees who had not filed a workers' compensation claim.

Addressing his exhaustion of leave, Vines contends that Mountaire failed to show that it terminated the employment of any other employee who exceeded the permitted amount of leave but who also had submitted a note from a doctor pertaining to some

---

[6] The warning stated: "This corrective action serves as a TERMINATION for Violation of the Attendance Policy."

11

excused medical leave. Similarly, Vines contends that Mountaire did not show that "it normally terminated employees who were put on light duty restrictions by a medical provider." Vines also contends that Mountaire "should have . . . accommodated" his light duty restriction because he was injured at work on March 11, 2019, and provided a note from his doctor. Finally, Vines argues that because Mountaire offered inconsistent reasons for his termination, Mountaire's stated reasons were not legitimate. We disagree with Vines's arguments.

Initially, we observe that although comparative evidence in employment cases is often relevant to an employer's motivation for dismissing an employee, it is not necessary for an employer to produce such evidence to satisfy its burden of persuasion under REDA. *Cf. Abels v. Renfro Corp.*, 436 S.E.2d 822, 827 (N.C. 1993) (explaining that such circumstantial evidence "is perhaps the best indication, other than the testimony of the parties themselves, of the rationale of the employer for the discharge"); *see Fatta*, 727 S.E.2d at 600 (employer satisfied burden without presenting evidence of how it treated similarly situated employees). Here, Vines does not dispute that he exhausted his 240 hours of permitted leave. Nor does he offer any evidence of a "light duty" position to which he could have been assigned.[7] Indeed, the record contains testimony from a Mountaire manager who stated that, as a matter of policy, Mountaire only accommodates "restricted duty" work for employees who have reported a workplace injury immediately

---

[7] We observe that Vines submits that his position as a "permanent grader" was "light duty," but nothing in the record supports this assertion.

to a supervisor, are treated in Mountaire's onsite clinic, and who ultimately file a claim for workers' compensation benefits. Nothing in this record demonstrates that Vines took any of these steps. Moreover, we are unpersuaded by any suggestion that Mountaire was required to accommodate Vines's injuries by offering him a "light duty" position. *See Wiley v. United Parcel Serv., Inc.*, 594 S.E.2d 809, 812 (N.C. Ct. App. 2004) ("Unlike the Americans with Disabilities Act, . . . REDA does not require an employer to make an accommodation for an employee.").

Our conclusion is not altered by Vines's additional argument that because Mountaire offered inconsistent reasons for his termination, those reasons were not legitimate. Although an employer's varying reasons for terminating an employee could undermine the legitimacy of those reasons, the record before us does not support such a conclusion here. Admittedly, Mountaire's documentation of Vines's termination is not a model of clarity. That documentation shows various explanations for his termination, including that (1) he was discharged for his attendance and for not returning from a leave of absence, and that (2) he resigned for medical reasons after his sister passed away. However, these reasons are supported by the coinciding factual circumstances presented in the record.

The record makes clear that Vines had used all of his available leave, that he suffered from an injury that prevented him from performing his job duties, that he did not file a workers' compensation claim for a job-related injury, and that his employment ended almost immediately after his leave of absence to care for his terminally ill sister. We therefore conclude that there is no dispute of material fact in this record precluding

13

summary judgment, and that a reasonable jury would be compelled to conclude that the greater weight of the evidence shows that Mountaire would have terminated Vines's employment in the absence of his protected activity.[8]   N.C. Gen. Stat. § 95-241(b); *McDowell*, 712 S.E.2d at 254.

### D.

Because we affirm the district court's award of summary judgment on Vines's REDA claim based on the disciplinary warning, relocation, and termination, the only allegedly adverse action remaining for consideration is the two-day suspension.  We hold that the record supports the district court's conclusion that any possible damages for lost wages for Vines's two-day suspension would fall below the $75,000 threshold necessary to invoke the court's diversity jurisdiction under 28 U.S.C. § 1332.  Thus, we affirm the district court's holding to "dismiss" this claim "with instructions to refile in state court."[9] *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (holding that discretionary supplemental jurisdiction applies when dismissal of claims in a diversity case causes the remaining amount in controversy to fall below the threshold).  We observe, however, that

---

[8] In reaching this conclusion, we also reject Vines's argument that Mountaire's reasons for terminating his employment "fail" because Vines's use of leave and his restriction to light duty work "were both connected to his engaging in protected activity."  Vines relies on *Edwards v. PCS Phosphate Co.*, 812 F. Supp. 2d 689 (E.D.N.C. 2011) for this argument but, in that case, an employee was suspended for insubordination on a subject directly related to his ongoing worker's compensation case.  812 F. Supp. 2d at 692, 695.  We conclude that, here, the connection between Vines's protected activity and his termination is too attenuated to undermine Mountaire's stated reasons for the termination.

[9] We further observe that Vines does not challenge in this appeal this portion of the district court's judgment.

14

the district court's judgment order does not reflect dismissal without prejudice of this claim so that Vines can refile the claim in state court should he so choose. Thus, we vacate that portion of the judgment and remand the case to permit the court to correct the judgment order in this manner.

III.

For these reasons, we affirm the district court's award of summary judgment to Mountaire on Vines's REDA claim with respect to the warning, the relocation, and the termination.[10] We also affirm the district court's discretionary dismissal of Vines's REDA claim relating to the two-day suspension, and we vacate the portion of the judgment relating to the two-day suspension and remand with instructions for the district court to amend its judgment to dismiss this claim without prejudice.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*
*WITH INSTRUCTIONS*

---

[10] As explained above, we also affirm the award of summary judgment to Mountaire on Vines's claim of wrongful discharge in violation of North Carolina public policy. *See supra* note 2.

15